# Matter of Silvestre MENDOZA-HERNANDEZ, Respondent
# Matter of Rufina CAPULA-CORTES, Respondent

*Decided May 1, 2019*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A deficient notice to appear that does not include the time and place of an alien's initial removal hearing is perfected by the subsequent service of a notice of hearing specifying that missing information, which satisfies the notice requirements of section 239(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229(a) (2012), and triggers the "stop-time" rule of section 240A(d)(1)(A) of the Act, 8 U.S.C. § 1229b(d)(1)(A) (2012). *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), distinguished; *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018), followed.

FOR RESPONDENTS: Terence S. Coonan, Esquire, Tallahassee, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Donald W. Cassidy, Associate Legal Advisor

BEFORE: Board En Banc: NEAL, Chairman; MALPHRUS, WENDTLAND, MULLANE, GREER, MANN, O'CONNOR, LIEBOWITZ, and KELLY, Board Members. Dissenting Opinion: GUENDELSBERGER, joined by ADKINS-BLANCH, Vice Chairman; COLE, GRANT, CREPPY, KENDALL CLARK, Board Members.

GREER, Board Member:

In a decision dated August 14, 2017, an Immigration Judge found the respondents removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2012), as aliens present in the United States without being admitted or paroled. She also denied their applications for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012), finding that they lacked the requisite period of continuous physical presence. The respondents have appealed from that decision, arguing that they are not foreclosed from establishing continuous physical presence pursuant to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondents, a husband and wife, are both natives and citizens of Mexico.  On October 11, 2010, the Department of Homeland Security ("DHS") served the respondents with notices to appear charging them with removability.  The notices to appear did not specify the time or place at which the respondents' initial removal hearing would be held.  The DHS commenced removal proceedings on November 22, 2010, by filing the notices to appear with the Immigration Court.  On December 8, 2010, the Immigration Court mailed notices of hearing to the respondents, which stated that their initial removal hearing was scheduled for 9:00 a.m. on January 6, 2011, in Miami.  The respondents appeared at this and several subsequent hearings.  Their attorney entered a notice of appearance on March 24, 2011.

The respondents filed applications for cancellation of removal, which the Immigration Judge denied, finding that they did not demonstrate they had been physically present in the United States for a continuous period of 10 years prior to the October 2010 service of the notice to appear, as required by section 240A(b)(1)(A) of the Act and the "stop-time" rule in section 240A(d)(1)(A).[1]  In her decision, the Immigration Judge found that the respondents submitted documentary evidence establishing physical presence since 2005, but she determined that they did not adequately demonstrate presence since October 2000.[2]  On September 5, 2017, the respondents filed a motion to reopen with the Immigration Court, seeking to submit additional evidence relating to their physical presence before 2005.  The respondents also filed a notice of appeal with the Board on September 11, 2017.[3]

While their appeal was pending, the respondents filed another motion to remand based on *Pereira*.  In that case, the Supreme Court rejected our

---

[1]  The "stop-time" rule in section 240A(d)(1)(A) of the Act states, in pertinent part, that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 239(a)." As relevant to this decision, section 239(a)(1) of the Act provides:

> In removal proceedings under section 240 [of the Act, 8 U.S.C. § 1229a (2012)], written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
>
> . . . .
>    (G)(i) The time and place at which the proceedings will be held.

[2]  The Immigration Judge determined that the respondents had otherwise established eligibility for relief, which is not in dispute on appeal.
[3]  Because the respondents filed their notice of appeal before the Immigration Judge issued a decision on the pending motion, jurisdiction over the motion vested with the Board.  The motion is now before us as a motion to remand.  *See* 8 C.F.R. § 1003.2(c)(4) (2018).

decision in *Matter of Camarillo*, 25 I&N Dec. 644, 651 (BIA 2011), where we held that "service of a notice to appear triggers the 'stop-time' rule, regardless of whether the date and time of the hearing have been included in the document." Instead, the Court held that a notice to appear that does not specify the time and place of an alien's removal proceedings "is not a 'notice to appear under section [239(a) of the Act, 8 U.S.C. § 1229(a) (2012)]' and therefore does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2110 (quoting section 240A(d)(1)(A) of the Act). Citing *Pereira*, the respondents argue that the service of their notices to appear was insufficient to trigger the "stop-time" rule and that the proceedings should be remanded for service of new "legally sufficient" notices to appear.

We requested supplemental briefing from the parties. In response to one of our inquiries, the respondents argue that the Immigration Court's subsequent service of a notice of hearing that conveyed time and place information did not trigger the "stop-time" rule because "jurisdiction has never vested" with the Immigration Court. They further assert that subject matter jurisdiction cannot be waived by their personal appearance before the Immigration Court and that their continuous physical presence will continue to accrue until the DHS issues notices to appear that include the time and place of their removal hearing.

In its supplemental brief, the DHS contends that the respondents' notices to appear, in combination with the notices of hearing specifying the time and place of their proceedings, provided the necessary written notice required by section 239(a)(1) of the Act to trigger the "stop-time" rule. The DHS further argues that the respondents are ineligible for cancellation of removal because they did not establish 10 years of continuous physical presence prior to service of the notices of hearing that contained information regarding the time and place of their initial hearing.

## II. ISSUE

The issue before us is whether the "stop-time" rule, which provides for termination of continuous residence and physical presence in the United States, is triggered when an alien who was served with a notice to appear that did not specify the time and place of the initial removal hearing is subsequently served with a notice of hearing that includes that essential information.

## III. ANALYSIS

### A. Jurisdiction

As an initial matter, we conclude that the respondents' jurisdictional arguments are foreclosed by *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (BIA 2018). In that case, we held that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Act, so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 447.

To date, the United States Courts of Appeals for the Second, Sixth, and Ninth Circuits have considered and deferred to *Bermudez-Cota* in precedential decisions. *See Banegas Gomez v. Barr*, No. 15-3269, 2019 WL 1768914, at *6–8 (2d Cir. Apr. 23, 2019) (holding that jurisdiction vests with the Immigration Court when the initial notice to appear does not specify the time and place of the proceedings, but notices of hearing served later include that information); *Karingithi v. Whitaker*, 913 F.3d 1158, 1159–62 (9th Cir. 2019) (same); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 312–15 (6th Cir. 2018) (same).[4]

Additionally, the Eleventh Circuit, in whose jurisdiction this case arises, recently rejected an alien's argument that she did not receive notice of her removal hearing because the notice to appear did not include the date and time of the hearing. *See Molina-Guillen v. U.S. Att'y Gen.*, 758 F. App'x 893, 898 (11th Cir. 2019) (per curiam). The court held that the deficient notice to appear and the subsequent notice of hearing supplying the missing information "[t]ogether . . . fulfilled the notice requirements in [section 239(a)(1)]." *Id.* at 898–99. The Eleventh Circuit therefore determined that the Immigration Judge "was authorized to enter the removal order in [the alien's] absence when she failed to appear at the hearing." *Id.* (citing section 240(b)(5)(A) of the Act, 8 U.S.C. § 1229a(b)(5)(A) (2012)).[5]

---

[4]　The Sixth Circuit recently followed *Hernandez-Perez* and *Karingithi* in holding that an Immigration Judge properly exercised jurisdiction where information regarding the time and place of the hearing, which was missing from the notice to appear, was provided in a notice of hearing that was subsequently issued, notwithstanding the alien's claim that he did not receive the notice of hearing. *See Santos-Santos v. Barr*, 917 F.3d 486, 491–92 (6th Cir. 2019). The court did not mention *Matter of Bermudez-Cota* in its decision.

[5]　Section 240(b)(5)(A) of the Act provides in pertinent part:

> Any alien who, after written notice required under paragraph (1) or (2) of section 239(a) has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the [DHS]

In this case, the respondents were properly served with notices of hearing providing time and place information, and they attended all their scheduled removal hearings. We therefore find no jurisdictional defect in their proceedings that would warrant termination or remand on this basis. *See Matter of Bermudez-Cota*, 27 I&N Dec. at 447.

### B. Case Law Regarding the "Stop-Time" Rule

Prior case law governing this issue is instructive and sheds light on the narrow character of the holding in *Pereira*. Before the Supreme Court decided *Pereira*, several circuit courts and the Board had addressed the question whether the notice requirements of section 239(a)(1) of the Act are satisfied by service of a notice to appear stating that the time and place of a hearing are to be set, followed by service of a separate notice of hearing that specifies that information.[6]

In *Dababneh v. Gonzales*, 471 F.3d 806, 808–09 (7th Cir. 2006), the Seventh Circuit rejected the alien's argument that the Immigration Judge did not have jurisdiction to initiate his removal proceedings because the notice to appear did not specify the date and time of his initial hearing. The court concluded that "[t]he fact that the government fulfilled its obligations under [section] 239(a) in two documents—rather than one—did not deprive the [Immigration Judge] of jurisdiction to initiate removal proceedings." *Id.* at 809. Regarding whether the "defective" notice to appear cut off the alien's accrual of physical presence, the Seventh Circuit held that once the DHS served the notice to appear and the notice of hearing, the alien received notice "that met the [section] 239 requirements through receipt of both" documents, and the "stop-time" rule cut off his accrual of physical presence. *Id.* at 810. In *Matter of Bermudez-Cota*, 27 I&N Dec. at 446–47, we cited with approval this two-part process, pursuant to which jurisdiction vested and the "stop-time" rule was triggered once the alien received *both* the notice to appear and the notice of hearing.

In *Matter of Camarillo*, 25 I&N Dec. at 645, we addressed the Immigration Judge's ruling that the alien was eligible for cancellation of removal under section 240A(a)(2) of the Act because her continuous

---

establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . .

[6]  We note that some decisions discussing the issue of proper notice refer to the "date and time" of the hearing. However, section 239(a)(1)(G) of the Act requires inclusion of the "time and place" of the hearing in the notice to appear. We will therefore otherwise refer to the required "time and place" in this decision.

residence did not end with the service of a notice to appear that lacked the date and time of her initial removal hearing.[7]  According to the Immigration Judge, the alien's residence only terminated when the Immigration Court issued a notice of hearing that included the required information.  The DHS appealed, arguing that the alien's residence ended when the notice to appear was served, even though it did not include the date and time of the hearing.

We concluded that the relevant statutory language of the "stop-time" rule at section 240A(d)(1)(A) of the Act is ambiguous and found the competing readings of the statute to be "equally plausible."  *Id.* at 647, 651.  However, we ultimately agreed with the DHS's position that its "service of a notice to appear triggers the 'stop-time' rule, regardless of whether the date and time of the hearing have been included in the document."  *Id.* at 651.  In this regard, we stated that "[n]o authority . . . supports the contention that a notice of hearing issued by the Immigration Court is a constituent part of a notice to appear, the charging document issued only by the DHS."  *Id.* at 648.  We further noted that "another reason an Immigration Court's notification of a hearing date does not 'serve' a notice to appear is that neither the Immigration Court nor the Immigration Judge has been delegated the authority to serve a notice to appear."  *Id.* at 650 (citations omitted).[8]

Shortly after we issued our decision in *Matter of Camarillo*, the Second Circuit decided *Guamanrrigra v. Holder*, 670 F.3d 404 (2d Cir. 2012) (per curiam).  In that case, the alien was served with a notice to appear before an Immigration Judge in Boston at a date and time to be set, followed later by a notice of hearing indicating the date and time of his initial removal hearing, which the alien and his counsel received by mail.  The alien was ordered removed in absentia.  His proceedings were later reopened based on lack of notice, but the Immigration Judge and Board denied the alien's application for cancellation of removal, reasoning that the "stop-time" rule was triggered by the service of the notice to appear.

Adopting the rationale articulated by the Seventh Circuit in *Dababneh* but without mentioning *Matter of Camarillo*, the Second Circuit held that "the stop-time rule is triggered upon service of a Notice to Appear that (*alone or in combination with a subsequent notice*) provides the notice required by [section] 239(a)(1)" of the Act.  *Id.* at 409–10 (emphasis added).  Because

---

[7]  The "stop-time" rule at section 240A(d)(1)(A) of the Act is also applicable to determine eligibility for relief under section 240A(a)(2), which requires 7 years of *continuous residence* in the United States after having been admitted in any status.

[8]  We now consider that analysis to be flawed.  A notice of hearing is not part of the notice to appear, which is not "served" by the Immigration Courts.  Instead, the notice of hearing is a separate notice, served in conjunction with the notice to appear, that satisfies the requirements of section 239(a)(1)(G) of the Act by providing the essential information regarding the time and place of the hearing.

service of the notice of hearing "perfected the notice required by section 239(a)(1)," the alien did not accrue the requisite 10 years of continuous physical presence and was ineligible for cancellation of removal. *Id.* at 410–11.

A number of circuit courts subsequently agreed with our decision in *Matter of Camarillo* and concluded that it was entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Moscoso-Castellanos v. Lynch*, 803 F.3d 1079, 1083 (9th Cir. 2015); *O'Garro v. U.S. Att'y Gen.*, 605 F. App'x 951, 953 (11th Cir. 2015) (per curiam); *Guaman-Yuqui v. Lynch*, 786 F.3d 235, 239–40 (2d Cir. 2015) (per curiam); *Gonzalez-Garcia v. Holder*, 770 F.3d 431, 434–35 (6th Cir. 2014); *Yi Di Wang v. Holder*, 759 F.3d 670, 674–75 (7th Cir. 2014); *Urbina v. Holder*, 745 F.3d 736, 740 (4th Cir. 2014). The Third Circuit, however, found no ambiguity in the "stop-time" rule and declined to defer to our decision. *Orozco-Velasquez v. Att'y Gen. U.S.*, 817 F.3d 78, 81–82 (3d Cir. 2016).

The alien in *Orozco-Velasquez* was served with a notice to appear ordering him to appear before an Immigration Judge in Elizabeth, New Jersey, at a date and time "to be set." *Orozco-Velasquez*, 817 F.3d at 79. Nearly 2 years later, in April 2010, the DHS mailed him "an otherwise identical" notice to appear correcting the address of the Immigration Court and, within a week, he received a notice of hearing containing the date and time of the removal proceedings. The Third Circuit held that "an initial [notice to appear] that fails to satisfy [section 239(a)(1)'s] various requirements will not stop the continuous residency clock until the combination of notices, properly served on the alien charged as removable, conveys the *complete* set of information prescribed by [section 239(a)(1)]." *Id.* at 83. Applying that reasoning, the court further determined that the Government only complied with section 239(a)(1) in April 2010, when the alien received both a notice to appear correcting the address of the Immigration Court and a notice of hearing establishing the date and time of removal proceedings. *Id.* at 84.

The First Circuit then addressed this issue in *Pereira v. Sessions*, 866 F.3d 1 (1st Cir. 2017), *rev'd*, 138 S. Ct. 2105. The alien there was admitted to the United States as a nonimmigrant visitor in 2000. In May 2006, he was served with a notice to appear that did not specify the date and time of his initial removal hearing. More than a year later, in August 2007, the DHS filed the notice to appear with the Immigration Court, which then mailed the alien a notice of hearing setting the date and time for his initial removal hearing. However, it was sent to the wrong address and was returned as undeliverable. The alien did not appear at his hearing and was ordered removed in absentia. In 2013, after he demonstrated that he did not receive the 2007 notice of

hearing, his removal proceedings were reopened and he applied for cancellation of removal.

In regard to the "stop-time" rule, the alien claimed that he had continued to accrue time until he received a notice of the hearing after his case was reopened in 2013. He agreed that the notice required by section 239(a)(1) of the Act "need not be provided in the same document," and that "two or more documents that together contain" all the information, such as the notice to appear served on him in 2006 and the hearing notice he received in 2013, could, "in combination," trigger the "stop-time" rule. *Id.* at 4. However, the Immigration Judge determined that the 2006 notice to appear alone triggered the "stop-time" rule, so the alien could not satisfy the 10-year continuous physical presence requirement. We agreed and dismissed the alien's appeal.

The First Circuit concluded that the language in section 240A(d)(1)(A) of the Act is ambiguous, and it gave deference under *Chevron* to our interpretation in *Matter of Camarillo* that the DHS's service of a notice to appear triggers the "stop-time" rule, regardless of whether the date and time of the hearing have been included in the notice. *Id.* at 2, 7–8. It denied the alien's petition for review, and the Supreme Court granted certiorari.

## C.  *Pereira v. Sessions*

The Supreme Court's analysis in *Pereira* focused on the plain language of the statute, specifically, "the intersection" of the "stop-time" rule in section 240A(d)(1)(A) of the Act, which terminates continuous residence or physical presence "when the alien is served a notice to appear under section 239(a)," and the notice requirements in section 239(a)(1) of the Act, which provides that a notice to appear must specify certain information, including the "time and place at which the proceedings will be held." *Pereira*, 138 S. Ct. at 2110. Based on the "plain text, the statutory context, and common sense," the Court held that a notice to appear that does not specify the time and place of the proceedings does not trigger the "stop-time" rule. *Id.* Because the Court found the language of the "stop-time" rule to be unambiguous, it did not need to consider *Chevron* deference. *Id.* at 2113, 2117. Furthermore, the Court did not address the propriety of the two-part notice process applied by several circuit courts because the alien had accrued the required 10 years of physical presence before he received notice of his hearing in the reopened removal proceedings. *See Pereira*, 138 S. Ct. at 2112 (noting that the proceedings were reopened in 2013).

To summarize the development of the case law on the question before us, the circuit courts initially ruled that if a notice to appear lacks information regarding the time and place of the hearing, the notice requirements of section 239(a)(1) of the Act are only satisfied, and the "stop-time" rule is

triggered, once the defective notice is perfected by the alien's receipt of a subsequent notice of hearing specifying the hearing's time and place. *See, e.g.*, *Guamanrrigra*, 670 F.3d at 409–10; *Dababneh*, 471 F.3d at 808–10. However, we rejected the application of such a two-step process in *Matter of Camarillo*, holding that the "stop-time" rule is triggered by service of a notice to appear alone, regardless of whether that notice contains time and place information. Several circuits then retreated from the initial trend of recognizing the two-step process and, instead, deferred to our holding in *Matter of Camarillo*.

This was followed by the Third Circuit's issuance of *Orozco-Velasquez*, which disapproved of *Matter of Camarillo* but did not disagree with the circuit courts that had previously recognized a two-step process. In fact, *Orozco-Velasquez* explicitly stated that the "stop-time" rule is triggered upon the service of the "combination" of the notice to appear and a subsequent notice of hearing that supplies the missing time and place information. *Orozco-Velasquez*, 817 F.3d at 83–84.

According to the Supreme Court's majority opinion in *Pereira*, certiorari was granted to resolve the division regarding the "stop-time" rule between the Third Circuit, which had rejected *Matter of Camarillo* as contrary to the plain language of the statute, and other circuits that had deferred to it. *Pereira*, 138 S. Ct. at 2113. While the Court majority abrogated *Matter of Camarillo* and the circuit court cases deferring to our decision, it did not disturb the Third Circuit's decision. Thus, although the Court was clearly aware of the circuit split, which it resolved in favor of the Third Circuit, it did not reject the portion of the holding in *Orozco-Velasquez* that recognized a two-step process under which a notice of hearing could perfect a notice to appear that had omitted the requisite time and place information.

Furthermore, since the alien in *Pereira* received only a deficient notice to appear, with no subsequent notice of hearing containing the time and place of his initial removal hearing until after he accrued 10 years of physical presence, the Supreme Court had no need to address either how the "stop-time" rule operates once such information has been properly conveyed or at what point the alien's period of continuous physical presence stops accruing. Consequently, we do not read the majority decision in *Pereira* as invalidating the two-step notice process, under which a subsequently issued notice of hearing "cures" or "perfects" a deficient notice to appear.

Thus, no court has adopted the view of our dissenting colleagues in this case that the deficiency in a notice to appear that is missing the time and place of the initial removal proceeding cannot be remedied by a notice of hearing that includes that information. The result of the dissent's approach is that there can be no way to perfect a notice to appear that is insufficient under section 239(a) in order to invoke the "stop-time" rule, which we do not

find to be persuasive, given the Supreme Court's decision and the circuit court cases issued both before and after it that support a two-step notice process.

### D. Two-Step Process

We conclude that in cases where a notice to appear does not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information perfects the deficient notice to appear, triggers the "stop-time" rule, and ends the alien's period of continuous residence or physical presence in the United States. Therefore, although the notices to appear served on the respondents on October 11, 2010, did not trigger the "stop-time" rule under *Pereira*, 138 S. Ct. at 2110, we hold that their continuous physical presence ended on December 8, 2010, when the Immigration Court sent them notices of hearing that specified the time and place of their initial removal hearing.

This rule is consistent with the Supreme Court's narrow mandate and "common sense" observation that "the Government has to provide noncitizens 'notice' of the information, *i.e.*, the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place." *Id.* at 2115. It is also consistent with the plain language of the statute, *Matter of Bermudez-Cota*, and the circuit court law that, prior to *Pereira*, held that the "stop-time" rule is triggered by a two-part process where an alien is served with a notice to appear in combination with a subsequent notice of hearing that provides the information required by section 239(a)(1) of the Act.[9] *See Orozco-Velasquez*, 817 F.3d at 83; *Guamanrriga*, 670 F.3d at 410; *Dababneh*, 471 F.3d at 810.

As the respondents have argued, *Pereira* can be interpreted more broadly and read in a literal sense to reach a different result, because the opinion includes language stating that a notice lacking the specific time and place of the removal proceedings does not equate to a notice to appear under section

---

[9]   Our interpretation is also consistent with the congressional intent behind the "stop-time" rule.  As we have stated, "By enacting the rule, Congress intended to prevent aliens from being able 'to "buy time," during which they could acquire a period of continuous presence that would qualify them for forms of relief that were unavailable to them when proceedings were initiated.'"  *Matter of Camarillo*, 25 I&N Dec. at 649 (quoting *Matter of Cisneros*, 23 I&N Dec. 668, 670 (BIA 2004) (quoting Report of the Committee on the Judiciary, House of Representatives, H.R. Rep. 104-469 (1996))).  If a notice of hearing cannot cure or perfect a deficient notice to appear, then the DHS would be required to re-serve a "corrected" notice to appear in proceedings once a cancellation of removal application is filed in order to trigger the "stop-time" rule.  In many cases this could be after the alien has appeared at multiple hearings over a number of years.  Such an outcome would defeat the reason for enacting the "stop-time" rule in the first place.

239(a)(1) of the Act. *Pereira*, 138 S. Ct. at 2110, 2113–14. But we did not elect that path in *Matter of Bermudez-Cota* and we do not do so here, particularly given the legal landscape underlying the circuit split addressed in *Pereira*. Rather, we understand *Pereira* as directing us to respond to the substantive concerns of fundamental fairness inherent in procedural due process and to applicants' settled expectations about eligibility for relief, which the Supreme Court explained were not met in *Pereira*.

We disagree with the dissent to the extent it argues that we are ignoring the Supreme Court's broader holding that "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* at 2114. To the contrary, we are applying that holding by concluding that the notices to appear initially served on the respondents did not trigger the "stop-time" rule because they lacked the requisite information about the time and place of the hearing. However, the Court's holding does not preclude a "perfected" notice to appear from stopping time, because that issue was not before the Court in *Pereira*.

Importantly, the Supreme Court repeatedly emphasized in *Pereira* that the question before it was "narrow." *Id.* at 2110, 2113; *see also Banegas Gomez*, 2019 WL 1768914, at *7 (noting "the care taken by the *Pereira* Court to emphasize the narrow scope of its holding"); *Karingithi*, 913 F.3d at 1161 (observing that the Court "emphasiz[ed] multiple times the narrowness of its ruling"); *Hernandez-Perez*, 911 F.3d at 314 (discussing "*Pereira*'s emphatically 'narrow' framing" (quoting *Pereira*, 138 S. Ct. at 2110, 2113)); *see also Matter of Bermudez-Cota*, 27 I&N Dec. at 443 (noting that the Court "specifically stated multiple times that the issue before it was 'narrow'" (quoting *Pereira*, 138 S. Ct. at 2110, 2113)). In this regard, the Court observed that the question presented by the alien—whether service of a "notice to appear" that fails to specify all of "the items listed" in section 239(a)(1) triggers the "stop-time" rule—"sweeps more broadly than necessary to resolve" the case.[10] *Id.* at 2113. The Court further stated that the "dispositive question" is "much narrower," namely, "Does a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held' . . . trigger the stop-time rule?" *Id.* (quoting section 239(a)(1)(G)(i) of the Act). In a footnote, the Court stated that it left "for another day whether a putative notice to appear that omits any of the other categories of information enumerated in [section 239(a)(1)] triggers the stop-time rule." *Id.* at 2113 n.5.

---

[10] Section 239(a)(1) of the Act requires that the "written notice" given to an alien must specify several things, only one of which is "[t]he time and place at which the proceedings will be held" in section 239(a)(1)(G)(i). *Pereira*, 138 S. Ct. at 2109–10.

As we observed in *Matter of Bermudez-Cota*, 27 I&N Dec. at 443, "*Pereira* involved a distinct set of facts." Because the alien in *Pereira* "never received notice of the time and date of his [initial] removal hearing, he failed to appear" and was ordered removed in absentia. *Pereira*, 138 S. Ct. at 2112. The respondents, like the alien in *Matter of Bermudez-Cota*, were properly served with notices to appear, followed by notices of hearing setting forth the time and place of their initial removal hearings. *Matter of Bermudez-Cota*, 27 I&N Dec. at 441, 443. The notices of hearing were served on the respondents in December 2010, approximately 2 months after they were served with their notices to appear. The respondents appeared at their initial removal hearing on January 6, 2011, and at every subsequent hearing. In addition, since they have been represented in these proceedings since March 2011, they had the opportunity to secure counsel and to adequately prepare.

We are also mindful of *Pereira*'s invocation of "common sense" in concluding that a notice that does not specify when and where to appear for removal proceedings is not a "notice to appear" that triggers the "stop-time" rule. *Id.* at 2110, 2115. The Supreme Court explained that

> common sense compels the conclusion that a notice that does not specify when and where to appear for a removal proceeding is not a "notice to appear" that triggers the "stop-time" rule. If the three words "notice to appear" mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens "notice" of the information, *i.e.*, the "time" and "place," that would enable them "to appear" at the removal hearing in the first place. Conveying such time and place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings.

*Id.* at 2115. In short, the Court explained that the fundamental purpose of notice is to convey essential information to the alien, such that the notice creates a reasonable expectation of the alien's appearance at the removal proceeding, which is consistent with the statutory text and the judicial precedent that departed from *Matter of Camarillo*.

This purpose can be satisfied by a combination of documents that jointly provide the notice required by statute. Although the provision in section 239(a)(1) of the Act stating that "a 'notice to appear'" must be given to the alien is in the singular, we do not read the statute as requiring that the "written notice" be in a single document. Rather, it may be provided in one or more documents—in a single or multiple mailings. And it may be served personally, by mail, or by a combination of both, so long as the essential information is conveyed in writing and fairly informs the alien of the time and place of the proceedings.

*Pereira* teaches that the "essential function of a notice to appear" is paramount, not the form of the notice. *Id.* at 2115 (noting that "a barebones document labelled 'Notice to Appear,' with no mention of the time and place of the removal proceedings . . . would do little if anything to facilitate appearance at those proceedings"). A notice to appear that does not contain the requisite information cannot form the basis of a reasonable expectation of the alien's appearance at the removal hearing.

Moreover, under the regulations, "the [DHS] shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b) (2018). But if time, place, and date information "is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.* Here, too, the focus is on the contents of the notice and facilitating the alien's appearance, not the title affixed to the document. *See Orozco-Velasquez*, 817 F.3d at 84 (stating that the purpose of a notice to appear "is to provide an alien with notice—of the charges against him and the basic contours of the proceedings to come").

The dissent relies heavily on *Pereira*'s discussion of section 239(a)(2) of the Act, which is entitled, "Notice of Change in Time or Place of Proceedings." In *Pereira*, the Government and the dissent observed that the "stop-time" rule makes "broad reference" to a notice to appear "under section 239(a)," which includes paragraphs (2) and (3), as well as paragraph (1). But the majority of the Court found that "only paragraph (1) bears on the meaning of a 'notice to appear.'"[11] *Pereira*, 138 S. Ct. at 2114. The Court further

---

[11] Section 239(a)(2) of the Act governs the notice of change in time and place of proceedings, and paragraph (3) provides for a system to record aliens' addresses and phone numbers. The dissent asserts that "[t]he Government argued in *Pereira* that, because the 'stop-time' rule refers to section 239(a) as a whole, the 'stop-time' rule was not limited to service of a section 239(a)(1) notice to appear but could be triggered by the service of other documents referenced in section 239(a)(2) that provide the time and place of hearing." *Matter of Mendoza-Hernandez & Capula-Cortes*, 27 I&N Dec. 520, 538 (BIA 2019) (Guendelsberger, dissenting). More accurately, the Supreme Court noted the point made by the Government and the dissent that the "stop-time" rule makes broad reference to a notice to appear under section 239(a) of the Act, which includes paragraphs (1) through (3). *Pereira*, 138 S. Ct. at 2114.

Justice Alito's dissent asserts that the "stop-time" rule's cross-reference to section 239(a)—without limiting it to paragraph (1)—indicates that "Congress chose to insert a broader cross-reference, one that refers to the general process of serving notices to appear as a whole." *Id.* at 2123 (Alito, J., dissenting). There is no reference in *Pereira* to an argument by the Government or the dissent that the "stop-time" rule could be triggered by the service of other documents, such as a subsequent notice of hearing. The facts of *Pereira* would not support such an argument being made because the only document that could

found that section 239(a)(2) "bolsters" its interpretation of the "stop-time" statute because "[b]y allowing for a 'change or postponement' of the proceedings to a 'new time or place,' paragraph (2) presumes that the Government has already served a 'notice to appear under section [239(a)]' that specified a time and place as required by [section 239(a)(1)(G)(i)]." *Id.* That section 239(a)(2) of the Act "presumes" that the time and place of the proceedings was already specified in a notice to appear does not preclude the possibility of a two-step process that allows a notice of hearing containing time and place information to perfect, or cure, a deficient notice to appear. The *Pereira* Court was not presented with that question.

On this point, we again find *Orozco-Velasquez* instructive. The dissent reads the Third Circuit as having "relied on section 239(a)(2) to permit an Immigration Court's notice of hearing to trigger the 'stop-time' rule" and finds that "its rationale directly conflicts with *Pereira*'s reading of that statutory provision." *Matter of Mendoza-Hernandez & Capula-Cortes*, 27 I&N Dec. 520, 542 (BIA 2019) (Guendelsberger, dissenting). Yet the court explicitly rejected any argument of ambiguity in the "stop-time" rule, concluding that the statute's incorporation of additional provisions, including section 239(a)(2), "does nothing to diminish the clear-cut command" in section 239(a)(1) that notice must specify the time and place at which the proceedings will be held. *Orozco-Velasquez*, 817 F.3d at 82–83.

After concluding that the plain language of the statute states that time stops only when the Government serves a notice to appear in conformance with section 239(a) of the Act, the Third Circuit continued:

> Moreover, in requiring that an "alien [be] served a notice to appear under section [239(a)]" to suspend the alien's accrual of continuous residency, [section 240A(d)(1)] simultaneously compels government compliance with each of [section 239(a)(1)'s notice to appear] requirements and accommodates a "change or postponement in the time and place of [removal] proceedings" when the government provides written notice of such changes to the alien. Congress's incorporation of [section 239(a)] in its entirety conveys a clear intent: that the government may freely amend and generally supplement its initial [notice to appear]; but to cut off an alien's

have stopped time before the alien accrued 10 years of continuous physical presence was the notice to appear, given that the initial hearing notice was sent to an incorrect address. And the dissent in *Pereira* concluded that *Chevron* deference should be given to our interpretation of the "stop-time" rule in *Matter of Camarillo*, where we held that a notice to appear alone triggers the "stop-time" rule, even if it does not include the time and place of the initial hearing. *Id.* at 2122, 2129. Therefore, we disagree with the dissent in this case to the extent it is suggesting that the Supreme Court has already addressed and resolved the question whether the "stop-time" rule can be triggered by the subsequent service of other documents, such as a notice of hearing, that provide the time and place of hearing.

eligibility for cancellation of removal, it must do so within the ten years of continuous residence identified in [section 240A(b)(1)(A)] (one of three cancellation-of-removal provisions the "stop-time" rule exists to explicate). Thus, an initial [notice to appear] that fails to satisfy [section 239(a)(1)'s] various requirements will not stop the continuous residency clock until the combination of notices, properly served on the alien charged as removable, conveys the *complete* set of information prescribed by [section 239(a)(1)] within the alien's first ten years of continuous residence.

*Id.* (first and fifth alterations in original). This analysis supports our conclusion that although a notice to appear that omits time and place information does not stop time, a notice to appear perfected by a notice of hearing that does include such information can stop time in accordance with section 240A(d)(1)(A)'s reference to "section 239(a)" of the Act.

Lastly, the dissent concludes that neither the service of the notices to appear nor the subsequent notices of hearing in this case triggered the "stop-time" rule. But it does not provide a clear answer as to how the "stop-time" rules operates in this situation under its interpretation of *Pereira*, absent a break in physical presence or the commission of a disqualifying crime. It simply posits alternative ending points, including service of a new notice to appear specifying the time and place of the hearing or the entry of a final order of removal. *See* sections 240A(d)(1)–(2) of the Act.

## IV. CONCLUSION

Until *Matter of Camarillo*, there was an "emerging consensus" among the courts of appeals that "the notice necessary to trigger the stop-time rule found in [section 240A(d)(1)] was not 'perfected' until the immigrant received all the information listed in [section 239(a)(1)]." *Pereira*, 138 S. Ct. at 2120 (Kennedy, J., concurring) (quoting *Guamanrriga*, 670 F.3d at 410); *Dababneh*, 471 F.3d at 810. In *Matter of Camarillo*, we rejected that interpretation. After *Matter of Camarillo*, the Third Circuit in turn rejected our conclusion that section 240A(d)(1)(A) of the Act is ambiguous and specified that under the statute's plain language, the "stop-time" rule unambiguously requires service of a notice to appear that meets the requirements of section 239(a)(1). *Orozco-Velasquez*, 817 F.3d at 83–84.

The majority opinion in *Pereira* recognized the split in the circuits and cited this aspect of *Orozco-Velasquez*'s holding without discussing or expressing disapproval of the Third Circuit's further holding that "the combination of notices" conveying all the information prescribed by section 239(a)(1) of the Act triggers the "stop-time" rule. *Orozco-Velasquez*, 817 F.3d at 83; *see also Pereira*, 138 S. Ct. at 2113 n.4. None of the courts involved in the circuit split had held that service of a subsequent notice of

hearing that included time and place information was insufficient to perfect the notice to appear. And the majority in *Pereira* did not indicate it was adopting that approach.

In his concurring opinion, Justice Kennedy criticized the circuits that granted *Chevron* deference to *Matter of Camarillo* after previously ruling that notice was not "perfected" until all the requirements of section 239(a)(1) of the Act were met. *Pereira*, 138 S. Ct. at 2120 (Kennedy, J., concurring). Neither the majority nor the concurrence, however, expressed disagreement with the aspects of those previous rulings that had held that the service of a notice of hearing containing time and place information indeed perfects a notice to appear that had omitted that information, such that the "stop-time" rule is invoked.

Accordingly, in light of the jurisprudence that preceded *Pereira*, which explained that the notice necessary to trigger the "stop-time" rule is "perfected" when an alien is served with a notice of hearing containing the time and place information required by section 239(a)(1) of the Act, and the Supreme Court's resolution of the circuit court split in favor of a plain language rejection of *Matter of Camarillo*, which we read as consistent with the analysis and holding in *Orozco-Velasquez*, we now adopt the "equally plausible" view advocated by the respondents in *Matter of Camarillo*, 25 I&N Dec. at 647.

We therefore hold that where a notice to appear does not specify the time and place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information "perfects" the deficient notice to appear, satisfies the notice requirements of section 239(a)(1) of the Act, and triggers the "stop-time" rule of section 240A(d)(1)(A) of the Act. *Pereira* did not reach this issue because the alien was not properly served with a notice of hearing providing the time and place information and so did not appear at his initial removal hearing. Because the respondents in this case appeared at their initial removal hearing after they received notices of hearing with proper notice of the time and place of their proceedings, we will deny their motion to remand based on *Pereira*.

We further conclude that the respondents' period of continuous physical presence ended on December 8, 2010, when they were served with notices of hearing scheduling their initial removal hearing on January 6, 2011. Accordingly, it is the respondents' burden to demonstrate 10 years of continuous physical presence in the United States measured backward from service of the notices of hearing. *See* section 240A(b)(1)(A) of the Act.

The record will be remanded for the Immigration Judge to consider whether the aliens have met this burden, upon consideration of the entire record, including testimony and corroborative evidence. The parties may supplement the record with additional evidence relevant to continuous

physical presence on remand, including the new evidence proffered with the respondents' motion to remand.

    **ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*DISSENTING OPINION*: John W. Guendelsberger, Board Member, in which Charles K. Adkins-Blanch, Vice Chairman; Patricia A. Cole, Edward R. Grant, Michael J. Creppy, and Molly Kendall Clark, Board Members, joined

    We respectfully dissent from the majority's determination that an Immigration Court's service of a notice of the initial hearing date in removal proceedings triggers the "stop-time" rule to end the period of continuous physical presence required for cancellation of removal.[1] The United States Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), governs this case and compels us to find that the service of a "notice of hearing" by an Immigration Court does not meet the definition of a "notice to appear" under section 239(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229(a) (2012), and therefore does not trigger the "stop-time" rule when a "notice to appear" from the Department of Homeland Security ("DHS") fails to specify the time of the initial proceedings.

## I. STOP-TIME RULE

    To qualify for cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012), an applicant must demonstrate 10 years of continuous physical presence in the United States. Under the "stop-time" rule in section 240A(d)(1)(A) of the Act, "any period of . . . continuous physical presence" is "deemed to end when the alien is served a notice to appear under section 239(a)." The Supreme Court in *Pereira* directly addressed the statutory text of the "stop-time" rule and the definition of "notice to appear" in section 239(a)(1) of the Act.[2] The Court found that the

---

[1] We agree with the majority decision insofar as it denies the respondent's request for termination of proceedings.

[2] The provisions for cancellation of removal, including the "stop-time" rule, as well as the "notice to appear" provisions of section 239(a) of the Act were enacted by section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-587 to 3009-597. Cancellation of removal replaced the "suspension of deportation" provisions in former section 244(a) of the Act, 8 U.S.C. § 1254 (1994). Applicants for suspension of deportation could continue to accrue time to meet the physical presence requirement during the course of deportation

"plain text, the statutory context, and common sense all lead inescapably and unambiguously" to the conclusion that the time and place of hearing must be designated in a section 239(a)(1) notice to appear to trigger the "stop-time" rule. *Id.* at 2110.

In so finding, the Court overruled the Board's decision in *Matter of Camarillo*, 25 I&N Dec. 644, 648 (BIA 2011), that service of a notice to appear cut off accrual of the time required for cancellation of removal, even if it did not specify the time and place of hearing. The Board reasoned in *Camarillo* that the "stop-time" rule "merely specifies the document the DHS must serve on the alien to trigger the 'stop-time' rule and does not impose substantive requirements for a notice to appear to be effective in order for that trigger to occur." *Id.* at 647. As to the significance of a notice of hearing later issued by an Immigration Court, the Board stated that "[n]o authority . . . supports the contention that a notice of hearing is a constituent part of a notice to appear, the charging document issued only by the DHS." *Id.* at 648.

The Court in *Pereira* framed the issue before it as whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by [section 239(a)(1)(G)(i)], trigger[s] the 'stop-time' rule." *Pereira*, 138 S. Ct. at 2113. The Court found that Congress had provided a "clear and unambiguous" answer to this question, namely, that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section [239(a)],' and so does not trigger the 'stop-time' rule." *Id.* at 2113–14.

In *Pereira*, the DHS failed to specify a time of hearing in the notice to appear, and the notice of the initial hearing date was sent by the Immigration Court after the respondent had accumulated the requisite 10 years of physical presence. In the case now before us, the DHS served a notice to appear that failed to specify a time of hearing, and the Immigration Court later served notice of the initial hearing date before the respondent had accrued 10 years of continuous physical presence.[3]

The legal issue in this case is whether the issuance of a notice of hearing by an Immigration Court triggers the "stop time" rule when the notice to appear issued by the DHS did not specify the time of hearing. The Court in *Pereira* answers this question, stating that "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must

---

proceedings until the entry of a final order of deportation. *See, e.g.*, *Matter of Castro*, 19 I&N Dec. 692, 693–94 (BIA 1988); *Matter of Chang*, 10 I&N Dec. 14, 16 (BIA 1962).

[3] The notice to appear issued by the DHS to the alien in *Pereira* did not set a date and time for the initial hearing in removal proceedings. An incorrectly addressed notice of hearing was later mailed by the Immigration Court to the alien. When he failed to appear at his hearing, he was ordered removed in absentia.

serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Pereira*, 138 S. Ct. at 2114. Under this holding, and the Court's underlying reasoning, a "notice of hearing" sent by an Immigration Court is not a "notice to appear" under section 239(a)(1) of the Act, as required by the "stop-time" rule.

### A. Plain Language

The reasoning of the Court in *Pereira* indicates that the event that triggers the "stop-time" rule is the service of a "notice to appear" that provides the essential information required by section 239(a)(1), including the time and place at which the hearing will be held. The Government argued in *Pereira* that, because the "stop-time" rule refers to section 239(a) as a whole, the "stop-time" rule was not limited to service of a section 239(a)(1) notice to appear but could be triggered by the service of other documents referenced in section 239(a)(2) that provide the time and place of hearing. *Pereira*, 138 S. Ct. at 2114. The Court rejected this argument, stating that "the broad reference to [section 239(a)] is of no consequence, because, as even the Government concedes, only paragraph (1) bears on the meaning of a 'notice to appear.'" *Id.* The Court reasoned that "[n]owhere else within [section 239(a)] does the statute purport to delineate the requirements of a 'notice to appear.' In fact, the term 'notice to appear' appears only in paragraph (1) of [section 239(a)]." *Id*.

The Court found that the plain language of section 239(a)(2) "bolsters" its interpretation of the statute that the notice of the date and time of the hearing must be included in a section 239(a)(1) notice to appear in order to trigger the "stop-time" rule. *Id.* As the Court explained:

> Paragraph (2) [of section 239(a)] provides that, "in the case of any change or postponement in the time and place of [removal] proceedings," the Government shall give the noncitizen "written notice . . . specifying . . . the new time or place of the proceedings." [Section 239(a)(2)(A)(i) of the Act.] By allowing for a "change or postponement" of the proceedings to a "new time or place," paragraph (2) presumes that the Government has already served a "notice to appear under [section 239(a)]" that specified a time and place as required by [section 239(a)(1)(G)(i)]. Otherwise, there would be no time or place to "change or postpon[e]." [Section 239(a)(2) of the Act.]

*Id.* (second alteration in original).

Under the Court's reasoning in *Pereira*, Congress provided clear and unambiguous language identifying the event that triggers the "stop-time" rule—that is, service by the DHS of a "notice to appear" under section 239(a)(1) that specifies the time and place of the hearing as required by

section 239(a)(1)(G), along with other essential information required by sections 239(a)(1)(A) through (G). A subsequent "notice of hearing" generated by the Immigration Court is not a section 239(a)(1) "notice to appear" and, therefore, does not trigger the "stop-time" rule.

A subsequent "notice of hearing" also cannot complete or cure a deficient "notice to appear." First, neither notice would meet, on its own, the definition of "a notice to appear" under section 239(a)(1). Second, the statute contains no ambiguity or gap that would permit a "combination" approach to trigger the stop time rule under the plain text roadmap provided by the Supreme Court in *Pereira*. The statute refers to a single document, "a notice to appear" issued by the DHS. *Pereira* makes clear that a section 239(a)(1) "notice to appear" must include the date and time of hearing in order to trigger the "stop-time" rule.

Prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), the initiation of deportation proceedings involved a two-step process beginning with a charging document known as an "order to show cause" that was served by the former Immigration and Naturalization Service that was then followed up by a notice of hearing date issued by the Immigration Court. *See* former sections 242B(a)(1)(A)–(F) of the Act, 8 U.S.C. § 1252b(a)(1)(A)–(F) (Supp. V 1993) (describing the essential elements of an order to show cause without reference to inclusion of the date and time of hearing). In the IIRIRA, Congress added section 239(a) to the Act in an effort to simplify the process for initiating removal proceedings. H.R. Rep. 104-469(I), 1996 WL 168955, at 159 (1996). In so doing, Congress moved from the two-step process for initiating deportation proceedings to a one-step "notice to appear" that specifies the time and place of hearing as an essential element of a section 239(a)(1) notice to appear.

The Supreme Court in *Pereira* found no ambiguity in the statute and concluded its opinion by stating that, "[a]t the end of the day, given the clarity of the plain language, we 'apply the statute as it is written.'" *Id.* at 2119–20 (citation omitted). We must do the same.

B. A Notice of Hearing Cannot Cure a Defective Notice to Appear

The Court in *Pereira* directly addressed whether the language of section 239(a)(1) "can be understood to define what makes a notice to appear *complete*." *Pereira*, 138 S. Ct. at 2116 (quoting *id.* at 2126, Alito, J., dissenting). The Court responded that

> [s]ection [239(a)(1)] does not say a "notice to appear" is "complete" when it specifies the time and place of the removal proceedings. Rather, it defines a "notice to appear"

> as a "written notice" that "specif[ies]," at a minimum, the time and place of the removal proceedings.

*Id.* (quoting section 239(a)(1)(G) of the Act) (third alteration in original). The Court emphasized that "the omission of time-and-place information is not, as the dissent asserts, some trivial, ministerial defect, akin to an unsigned notice of appeal." *Id.* Rather, such an omission would "deprive [the notice to appear] of its essential character." *Id.* at 2116–17 (alteration in original) (quoting *id.* at 2127 n.5 (Alito, J., dissenting)). The Court's analysis establishes that the plain text of the "stop-time" rule requires the DHS to include the notice of time and place of hearing in the section 239(a)(1) notice to appear in order to trigger the "stop-time" rule.

Other aspects of the Court's analysis indicate that its holding applies to all cases involving the "stop-time" rule in which the DHS does not include the time or place of hearing in its notice to appear. For example, in response to the Government's concerns that the DHS would have difficulty coordinating scheduling of hearings in the Immigration Courts if required to set initial hearing dates in notices to appear in order to trigger the "stop-time" rule, the Court responded that the DHS had previously established such an arrangement with the courts and that "[g]iven today's advanced software capabilities, it is hard to imagine why DHS and immigration courts could not again work together to schedule hearings before sending notices to appear." *Id.* at 2119.

The Court also responded to concerns that "[r]equiring the Government to furnish time and place information in a notice to appear" would impede the statute's objective of preventing administrative delays by noting that "once a proper notice to appear is served, the stop-time rule is triggered, and a noncitizen would be unable to manipulate or delay removal proceedings to 'buy time.'" *Id.*

Justice Alito's dissenting opinion confirms that the "stop-time rule" is triggered when the DHS "serve[s] a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* at 2125 (Alito, J., dissenting) (quoting *id.* at 2113 (majority opinion)). In Justice Alito's view, the Court's holding means that, "going forward the Government will be forced to include an arbitrary date and time on every notice to appear that it issues." *Id.* at 2129. Justice Sotomayor, writing for the majority, responds that it trusts the Government will not "engage in [such] 'arbitrary' behavior." *Id.* at 2119.

The reasoning of the Supreme Court in *Pereira*, when considered in its entirety, leaves little room for doubt that the Court's decision requires us to follow the plain language of the Act that the DHS must serve a section 239(a)(1) "notice to appear" that includes the date, time, and place of hearing

in order to trigger the "stop-time" rule.[4]  The Court in *Pereira* repeatedly emphasized the "plain text" of the "stop-time" rule and left no room for agency gap-filling as to whether an Immigration Court can "complete" or "cure" a putative "notice to appear" by subsequent issuance of a "notice of hearing" that would trigger the "stop-time" rule on the date of that event. Quite simply, under the Act and implementing regulations designating the DHS as the agency responsible for issuing a "notice to appear," a "notice of hearing" is not a "notice to appear" and, therefore, it does not satisfy the requirement that the DHS serve a section 239(a)(1) "notice to appear" that specifies the date and time of hearing, in order to trigger the "stop-time" rule. *See* 8 C.F.R. § 239.1 (2018) (designating the DHS officials authorized to issue a "notice to appear").

## II. MAJORITY'S APPROACH

The majority decision essentially adopts the approach taken by the United States Court of Appeals for the Third Circuit in *Orozco-Velazquez v. Att'y Gen. U.S.*, 817 F.3d 78 (3d Cir. 2016), to hold that a notice of hearing issued by an Immigration Court may trigger the "stop-time" rule when the DHS has not specified a hearing date in the notice to appear.[5]  In its analysis of the "stop-time" rule, *Orozco-Velazquez* relied on section 239(a)(2) to conclude that "Congress's incorporation of [section 239(a)] in its entirety conveys a clear intent:  that the government may freely amend and generally supplement its initial [notice to appear]." *Id.* at 83.  Since the decision in *Orozco-Velazquez* was issued prior to *Pereira*, its reasoning does not take into account the Supreme Court's determination that the "stop-time" rule

---

[4]   The Court in *Pereira*, 138 S. Ct. at 2115 n.7, reasoned that

> neither the Government nor the dissent offers any convincing basis, much less one rooted in the statutory text, for treating time-and-place information as any less crucial than charging information for purposes of triggering the "stop-time" rule. . . . At bottom, the Government's self-serving position that a notice to appear must specify charging information, but not the time-and-place information, reveals the arbitrariness inherent in its atextual approach to the "stop-time" rule.

[5]   The majority reads *Pereira*, which refers to various circuit court decisions, as favorably endorsing *Orozco-Velazquez.*  However, the Supreme Court's reference to *Orozco-Velazquez* is limited to a parenthetical explanation of that decision, which describes the case as "holding that the stop-time rule unambiguously requires service of a 'notice to appear' that meets [section 239(a)(1)'s] requirements." *Pereira*, 138 S. Ct. at 2113 n.4.  The Court does not refer to or endorse the part of the *Orozco-Velazquez* decision that finds that service of a hearing notice by an Immigration Court can be an event that triggers the stop-time rule.

contains plain and unambiguous language in its description of the event that triggers the "stop-time" rule, namely, the service of a section 239(a)(1) notice to appear.[6]

To the extent that *Orozco-Velazquez* relied on section 239(a)(2) to permit an Immigration Court's notice of hearing to trigger the "stop-time" rule, its rationale directly conflicts with *Pereira*'s reading of that statutory provision. As discussed above, the Court in *Pereira* explicitly rejected reliance on section 239(a)(2) as the underpinning for an approach that would excuse the DHS from the requirement that it specify the time and place of hearing in its notice to appear in order to trigger the "stop-time" rule. The Court in *Pereira* found that, "[b]y allowing for a 'change or postponement' of the proceedings to a 'new time or place,' paragraph (2) presumes that the Government has already served a 'notice to appear under section [239(a)]' that specified a time and place as required by [section 239(a)(1)(G)(i)]." *Pereira*, 138 S. Ct. at 2114. Otherwise, as the Court explained, there would be no time or place to change or postpone.

In reaching its result, the majority conflates an Immigration Court's service of a "notice of hearing" with the DHS's service of a "notice to appear." The majority essentially amends Congress' plain language description of the triggering event in the "stop-time" rule (DHS service of the "notice to appear") by adding an additional triggering event (Immigration Court service of a "notice of hearing"), so that the "stop-time" rule can be triggered by either event, whichever occurs first. The distinction between a "notice to appear" issued by the DHS and a "notice of hearing" issued by an Immigration Court is well understood. An Immigration Court does not serve a "notice to appear" because neither the Immigration Court nor an Immigration Judge has been delegated such authority. *See* 8 C.F.R. § 239.1 (designating the DHS officials authorized to serve a "notice to appear" in accordance with section 239(a) of the Act).

The majority reasons that because a notice of hearing sent by an Immigration Court resolves concerns about adequate notice and also provides a benchmark for stopping accrual of physical presence, the purposes of the "stop-time" rule would be met under their approach. This may be true, but such an approach does not take into account the plain text analysis of the "stop-time" rule outlined by the Supreme Court in *Pereira,* and it ignores the Court's recognition that the "stop-time" rule is triggered by service of a

---

[6]   A section 239(a)(1) notice to appear is the charging document issued by the DHS on a Form I-862 (Notice to Appear). The Form I-862 provides all of the information required by section 239(a)(1) of the Act, and it leaves blank space for specification of the charges against the alien and the time and place of the hearing. Under the "stop-time" statute, the DHS may amend and reissue its initial notice to appear, and the DHS's service of a reissued notice to appear specifying the date of hearing may trigger the "stop-time" rule.

section 239(a)(1) "notice to appear" that specifies the time and place of hearing as an essential part of the charging document. It also ignores the implementing regulations that recognize that only the DHS can issue a "notice to appear" in accordance with section 239(a) of the Act. 8 C.F.R. § 239.1. Because the Act provides an explicit definition of a section 239(a)(1) "notice to appear" and the "stop-time" rule explicitly refers to that definition, the plain language of the statute controls.

According to this plain language, an Immigration Court's service of a notice of hearing cannot trigger the "stop-time" rule. However, the Court's decision in *Pereira* does not preclude the DHS from serving a new notice to appear that meets the requirements of the "stop-time" rule. *See, e.g.*, *Moscoso-Castellanos v. Lynch*, 803 F.3d 1079, 1082 (9th Cir. 2015) (noting that when the initial notice to appear did not specify a date of hearing, "accrual of physical presence did not stop until [the alien] was served a second [notice to appear] that included the missing hearing information" (citing *Garcia-Ramirez v. Gonzalez*, 423 F.3d 935, 937 n.3 (9th Cir. 2005))).[7]

Additionally, proof of 10 years of continuous physical presence is just one among many eligibility requirements for cancellation of removal. The applicant must also demonstrate that (1) removal would cause "exceptional and extremely unusual hardship" to a citizen or lawful permanent resident spouse, child, or parent; (2) the applicant has "good moral character"; (3) the applicant was not inadmissible or removable for specified criminal offenses; and (4) relief from removal should be granted in the exercise of discretion. Sections 240A(b)(1)(B)–(D) of the Act.

Entry of a final order of removal is also relevant to accrual of continuous physical presence. *See, e.g.*, *Matter of Cerna*, 20 I&N Dec. 399, 400–01 (BIA 1991) (holding that the residence requirement for a waiver of deportation under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1988), ends upon entry of a final order of removal); *Matter of Chang*, 10 I&N Dec. 14, 16 (BIA 1962) (same with regard to the physical presence requirement for suspension of deportation under former section 244(a) of the Act, 8 U.S.C. § 1254(a) (1958)). The entry of an in absentia order of removal after notice of the consequences of failure to appear for removal proceedings also renders an alien ineligible for cancellation of removal for 10 years after the date of the final order of removal. Section 240(b)(7) of the Act, 8 U.S.C. § 1229a(b)(7) (2012).

---

[7] Of course, the Court in *Pereira* abrogated *Moscoso-Castellanos* insofar as the Ninth Circuit deferred to the Board's decision in *Matter of Camarillo*. The Ninth Circuit's approach prior to *Camarillo* presents an aspect of the circuit court conflict referred to in *Pereira*, as well as an approach that is fully consistent with the Court's holding and reasoning there.

## III.  JURISDICTION

In *Matter of Bermudez-Cota*, 27 I&N Dec. 441 (2018), the Board held that a section 239(a)(1) notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the Act, so long as a notice of hearing specifying this information is later sent to the alien.  In so holding, we distinguished *Pereira*, noting that "the Court did not hold that proceedings initiated by a notice to appear that fails to specify a time, date, and place for the initial hearing should be terminated."  *Id.* at 444.  Application of the "stop-time" provision affects eligibility for cancellation of removal, a discretionary form of relief, while determination of Immigration Court jurisdiction involves termination of proceedings.  Different statutory and regulatory frameworks govern each of these distinct issues.

The Second, Sixth, and Ninth Circuits, in decisions addressing Immigration Court jurisdiction, have recently approved the Board's reasoning and holding in *Bermudez-Cota*, while emphasizing that the "stop-time" issue addressed in *Pereira* involves a distinct and separate issue.  *See Banegas Gomez v. Barr*, No. 15-3269, 2019 WL 1768914, at *6–8 (2d Cir. Apr. 23, 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160–62 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 312–15 (6th Cir. 2018).

As the Sixth Circuit explained, "The issue in *Pereira* required the Court to begin by looking to the plain text of the stop-time statute, which provides that the period of continuous physical presence necessary to qualify for cancellation of removal ends 'when the alien is served a notice to appear under section [239(a)].'"  *Hernandez-Perez*, 911 F.3d at 313.  The court pointed out that "based on the plain text of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings."  *Id.* (alteration in original) (quoting *Pereira*, 138 S. Ct. at 2114).  The court acknowledged that there is "some common-sense discomfort in adopting the position that a single document labeled 'Notice to Appear' must comply with a certain set of requirements for some purposes, like triggering the stop-time rule, but with a different set of requirements for others, like vesting jurisdiction with the immigration court."  *Id.* at 314.  However, referring to the breadth of *Pereira*'s holding on the "stop-time" rule, the court noted that the importation of that approach into the jurisdictional context "would have unusually broad implications."  *Id.*

In *Karingithi*, the Ninth Circuit noted that "*Pereira* was not in any way concerned with the Immigration Court's jurisdiction." *Karingithi*, 913 F.3d at 1159. Rather, the court emphasized that "*Pereira*'s analysis hinges on 'the intersection' of two statutory provisions: [section 240A(d)(1)'s] stop-time rule and [section 239(a)'s] definition of a notice to appear." *Id.* at 1161 (quoting *Pereira*, 138 S. Ct. at 2110). The court noted that the "stop-time rule is not triggered by *any* 'notice to appear'—it requires a 'notice to appear *under* section [239(a)].'" *Id.* (quoting section 240A(d)(1) of the Act). The court concluded that "*Pereira* treats this statutory cross-reference as crucial: 'the word "under" provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by [section 239(a)].'" *Id.* (quoting *Pereira*, 138 S. Ct. at 2117); *see also Banegas Gomez*, 2019 WL 1768914, at *7 ("The result in *Pereira* was based on the intersection of *two* statutory provisions, one of which, addressing the stop time rule, is not relevant to [the alien's] proceeding at all.").

## IV. CONCLUSION

Congress, in section 240A(d)(1)(A) of the Act defined the event that triggers the "stop-time" rule as "service of a notice to appear under section 239(a)." The Court in *Pereira*, 138 S. Ct. at 2114–15, held that Congress' reference to "service of a notice to appear under section 239(a)," means a "notice to appear" as defined in section 239(a)(1) of the Act. The Court also held that, "[b]ased on the plain language of the statute, it is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* at 2114 (alteration in original) (quoting section 239(a)(1) of the Act). As the Court concluded, "At the end of the day, given the clarity of the plain language, we 'apply the statute as it is written.'" *Id.* at 2119–20. The plain language of the Act leaves no room for the majority's conclusion that a subsequent notice of hearing can cure a notice to appear that fails to specify the time and place of the initial removal hearing.

For these reasons, neither the service of the notice to appear nor the subsequent service of a notice of hearing on the respondents triggered the "stop-time" rule for purposes of cancellation of removal under section 240A of the Act. We therefore respectfully dissent.