**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 25, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

JOSE ANGEL BANUELOS-
GALVIZ,

      Petitioner,

v.

WILLIAM P. BARR, Attorney
General,

      Respondent.

No. 19-9517

_____

**Petition for Review of a Decision of the**
**Board of Immigration Appeals**
_____

Mark Robert Barr, Denver, Colorado, for Petitioner.

William C. Minick, Attorney, Office of Immigration Litigation, U.S.
Department of Justice, Washington, D.C. (Linda S. Wernery, Assistant
Director, with him on the briefs) for Respondent.
_____

Before **HOLMES**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

    This petition involves qualification for a remedy known as

"cancellation of removal," which allows noncitizens to avoid removal

under certain circumstances. To qualify for cancellation of removal, noncitizens must continuously stay or reside in the United States for a minimum number of years. The requirement varies based on whether the noncitizens are lawful permanent residents. If the noncitizens are lawful permanent residents, they must have continuously resided in the United States for at least seven years. 8 U.S.C. § 1229b(a)(2). All other noncitizens must have continuously been present for at least ten years. 8 U.S.C. § 1229b(d)(1)(A); *see* Part 1, below. The period of continuous presence terminates upon service of "a notice to appear under § 1229(a)" according to a provision known as the "stop-time rule." 8 U.S.C. § 1229b(d)(1).

This case involves the relationship between the stop-time rule and the statutory requirements for notices to appear. Under these requirements, a notice to appear must include the time of the removal hearing. 8 U.S.C. § 1229(a)(1)(G)(i); *see* Part 1, below. When the time is missing, the notice to appear does not trigger the stop-time rule. *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018).

But what if an incomplete notice to appear is followed by a notice of hearing that supplies the previously omitted information? We conclude that the stop-time rule is still not triggered. In our view, the stop-time rule is triggered by one complete notice to appear rather than a combination of documents.

2

**1. Mr. Banuelos was served with a deficient notice to appear and a subsequent notice of hearing that supplied the date and time of his removal hearing.**

Mr. Banuelos entered the United States in 2006. Roughly three years later, Mr. Banuelos was served with a document labeled "Notice to Appear." By statute, a notice to appear must include the time of the removal hearing. 8 U.S.C. § 1229(a)(1)(G)(i); *see* p. 2, above. But Mr. Banuelos's document did not tell him the date or time of the hearing, so the immigration court later sent him a notice of hearing with this information.

Mr. Banuelos then sought asylum, withholding of removal, and protection under the Convention Against Torture. The immigration judge rejected each request, and Mr. Banuelos appealed to the Board of Immigration Appeals.

While the administrative appeal was pending, the Supreme Court decided *Pereira v. Sessions*, which held that the stop-time rule is not triggered by a notice to appear that omits the time of the removal hearing. 138 S. Ct. 2105, 2113–14 (2018). Because Mr. Banuelos's notice to appear lacked both the date and time, he moved for a remand so that the immigration judge could consider his request for cancellation of removal.

To qualify for cancellation of removal, Mr. Banuelos needed to show continuous presence in the United States for at least ten years. 8 U.S.C. § 1229b(d)(1)(A); *see* p. 2, above. His ability to satisfy this requirement

3

turned on whether the combination of the deficient notice to appear and notice of hearing had triggered the stop-time rule. If the stop-time rule had been triggered, Mr. Banuelos would have had only about three years of continuous presence. But if the stop-time rule had not been triggered, Mr. Banuelos's continuous presence would have exceeded the ten-year minimum.

The Board held that the stop-time rule had been triggered because the combination of the two documents—the incomplete notice to appear and the notice of hearing with the previously omitted information—was the equivalent of a complete notice to appear. Given this application of the stop-time rule, the Board found that Mr. Banuelos's period of continuous presence had been too short to qualify for cancellation of removal. So the Board denied his motion to remand.

**2.      We apply the abuse-of-discretion standard to the Board's denial of the motion to remand.**

Mr. Banuelos seeks judicial review of the denial of his motion to remand. We review the denial of this motion for an abuse of discretion. *Neri-Garcia v. Holder*, 696 F.3d 1003, 1009 (10th Cir. 2012). The Board abuses its discretion when it makes an error of law. *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017).

The issue here involves a pure matter of law. *Guadalupe v. Attorney Gen.*, ___ F.3d ___, No. 19-2239, 2020 WL 913242, at *2 (3d Cir. Feb. 26,

4

2020). Mr. Banuelos's motion to remand hinged on his qualification for cancellation of removal, which in turn hinged on whether the stop-time rule had been triggered by the combination of a deficient notice to appear and the notice of hearing.[1] We thus consider whether the Board made an error of law by applying the stop-time rule based on a combination of the deficient notice to appear and the notice of hearing.

**3.    We must decide whether to defer to the Board's interpretation of § 1229.**

To answer this legal question, we consider whether to give deference to the Board's decision. The Board decided to apply the stop-time rule based on its interpretation of 8 U.S.C. § 1229. In the past, the Board had interpreted § 1229 to cover the combination of an incomplete notice to appear and a subsequent notice of hearing that contained the previously missing information. *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520, 529 (BIA 2019) (en banc).

We must sometimes defer to the Board's statutory interpretation under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Afamasaga v. Sessions*, 884 F.3d 1286, 1289 (10th

---

[1]    The immigration judge ordered Mr. Banuelos to file applications for relief by March 30, 2011. The government contends that as of March 30, 2011, Mr. Banuelos had continuously remained in the United States for only 4-1/2 years. But the Board denied Mr. Banuelos's motion based on the stop-time rule rather than the deadline to apply for cancellation of removal. So we need not address the effect of this deadline.

Cir. 2018). To determine if we should defer to the Board, we first ask whether Congress has directly spoken on the issue. *Chevron*, 467 U.S. at 842–43. If Congress has not directly spoken on the issue, we consider whether the Board's statutory interpretation was permissible. *Id.* at 843–44.

**4.      Congress has directly spoken on whether the combination of a notice to appear and notice of hearing can trigger the stop-time rule.**

In our view, Congress has directly spoken on the issue through unambiguous language in the pertinent statutes. Under this statutory language, the stop-time rule is not triggered by the combination of a defective notice to appear and a notice of hearing.

To determine whether Congress has directly spoken on the issue, we use "traditional tools of statutory construction." *Chevron*, 467 U.S. at 843 n.9 (1984). Using these tools, we must determine whether "Congress had an intention on the precise question at issue." *Id.*

To ascertain this intention, we start with the statutory language. *WildEarth Guardians v. U.S. Fish and Wildlife Serv.*, 784 F.3d 677, 684 (10th Cir. 2015). Because this case involves the relationship between the stop-time rule (8 U.S.C. § 1229b(d)(1)(A)) and the statutory requirements for notices to appear (8 U.S.C. § 1229(a)), we examine the statutory language for both the stop-time rule and a notice to appear.

6

The stop-time rule provides that "continuous physical presence in the United States shall be deemed to end . . . *when* the alien is served a notice to appear *under* § 1229(a) of this title." 8 U.S.C. § 1229b(d)(1)(A) (emphasis added). This sentence contains two clauses linked to the phrase "a notice to appear." The first clause states that the period of continuous presence ends "when" the noncitizen is served with "a notice to appear." *Id.* The word "when" signals an event (service of a notice to appear) that terminates the period of continuous presence. The second clause refers to a notice to appear "under" § 1229(a). The word "under" means "in accordance with" or "according to" § 1229(a). *Pereira v. Sessions*, 138 S. Ct. 2105, 2117 (2018). Based on these two clauses, the Supreme Court held that the stop-time rule is triggered only by the service of a notice to appear that satisfies § 1229(a). *Id.* at 2113–14.

Given this holding, we consider what § 1229(a) requires. Section 1229(a) says that "written notice (in this section referred to as a 'notice to appear') shall be given . . . specifying" information that includes "[t]he time . . . at which the proceedings will be held." 8 U.S.C. § 1229(a)(1). The Supreme Court has held that this statutory language defines a notice to appear as a document that includes the time of the removal hearing. *Pereira*, 138 S. Ct. at 2116–17. So a document omitting the time of the hearing is not considered a notice to appear. *Id.*

7

Mr. Banuelos was served with a document that did not specify either the date or time of the hearing. But the government argues that the combination of the incomplete notice to appear and a later notice of hearing could satisfy § 1229(a) and trigger the stop-time rule. We disagree.

The stop-time rule refers to "a notice to appear," using the singular article "a." This article ordinarily refers to one item, not two. *See United States v. Hayes*, 555 U.S. 415, 421 (2009) (noting that a statute had "use[d] the word 'element' in the singular, suggesting "that Congress [had] intended to describe only one required element"). We would thus naturally read the statutory language for the stop-time rule ("a notice to appear") to involve a single document rather than a combination of two documents. Given this natural reading, the stop-time rule appears to unambiguously state that continuous presence ends only when the noncitizen is served with a single notice to appear, not a combination of two documents.

Despite this natural reading of the statutory language, the government argues that the stop-time rule's use of the phrase "a notice to appear" could refer to multiple documents. The Sixth Circuit agrees that a notice to appear could consist of multiple documents despite the statutory use of the singular article "a." *Garcia-Romo v. Barr*, 940 F.3d 192, 201 (6th Cir. 2019). In support, the Sixth Circuit analogizes to an author who has submitted "a book" piecemeal as it is drafted. *Id*. The Sixth Circuit treats the analogy as evidence that singular articles like "a" can refer to

8

multiple parts of a single item. *Id.*; *see also Yanez-Pena v. Barr*, ___ F.3d ___, No. 19-60464, 2020 WL 960829, at \*5 (5th Cir. Feb. 28, 2020) (agreeing "with the Sixth Circuit's reasoning in *Garcia-Romo* that multiple documents may collectively provide the notice required under § 1229(a)").

Federal law confirms that a singular article may refer to multiple items. Dictionary Act, 1 U.S.C. § 1. But in most contexts, the singular article "a" refers to only one item. Consider a purchaser ordering a book from Amazon. The purchaser would surely be surprised to receive individual chapters in the mail. Or a publisher who asked would-be authors to submit "a manuscript" would presumably frown at seriatim submissions of individual chapters. The article "a" can thus refer to multiple items, but only when the context involves multiple items. *Id.*

To determine the statutory context, we focus on Congress's intent. *See United States v. Hayes*, 555 U.S. 415, 422 n.5 (2009) (explaining that the Dictionary Act should only be used when it is "necessary to carry out the evident intent of the statute") (quoting *First Nat. Bank in St. Louis v. Missouri*, 263 U.S. 640, 675 (1924)). Congress sometimes intends for a singular term to refer to multiple items. For example, Congress might provide for multiple clothing allowances by authorizing "a clothing allowance." *Sursely v. Peake*, 551 F.3d 1351, 1355–56 (Fed. Cir. 2009) (interpreting the statutory term "a clothing allowance" to refer to multiple

9

clothing allowances).[2] But in other circumstances, Congress uses the singular article "a" to refer to only one item. Given the context of the enactment of § 1229(a), Congress intended the singular article "a" to refer to a single document satisfying all of the statutory requirements for a notice to appear.

Before the enactment of § 1229(a), removal proceedings could be initiated through an order to show cause that was silent on when the hearing would occur, followed by a notice of hearing that supplied the date and time. 8 U.S.C. § 1252b (1995). To simplify removal proceedings, Congress adopted § 1229(a), replacing the two documents with a single notice to appear, which had to include all of the information previously sprinkled throughout the order to show cause and the notice of hearing. 8 U.S.C. § 1229(a)(1); *see* Report of the Committee on the Judiciary, House of Representatives, H.R. Rep. 104-469(I) (1996), 1996 WL 168955 at *159 (aiming to "simplify procedures for initiating removal proceedings" by creating a "single form of notice"). Given this congressional intent to

---

[2]    The Sixth Circuit based its examples on a book: Margaret Bryant's *English in the Law Courts: The Part that Articles, Prepositions, and Conjunctions Play in Legal Decisions* (1962). *Garcia-Romo v. Barr*, 940 F.3d 192, 202 (6th Cir. 2019). This book points out that some opinions interpret laws using the singular article "a" to refer to either a single item or multiple items. Margaret M. Bryant, *English in the Law Courts: The Part that Articles, Prepositions, and Conjunctions Play in Legal Decisions* 36–41 (1962). But in the opinions treating the article "a" as a reference to multiple items, the legislature had otherwise shown an intent to refer to multiple items. *Id.*

10

replace two documents with one, we should be wary of reading the singular "a" in § 1229 to refer to multiple documents. *See Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

Though Congress created § 1229 in order to combine two documents into one, the government argues that two documents may still constitute a notice to appear under the statute, relying on (1) Congress's purpose in adopting the stop-time rule and (2) the text of § 1229(a). We reject both arguments.

As the government points out, Congress was concerned that noncitizens could delay their removal proceedings in order to extend the periods of continuous presence. *See In re Cisneros-Gonzalez*, 23 I & N Dec. 668, 670 (BIA 2004); Report of the Committee on the Judiciary, House of Representatives, H.R. Rep. 104-469(I) (1996), 1996 WL 168955 at *122. The government contends that Mr. Banuelos's interpretation would allow noncitizens to manipulate the removal process in order to extend their periods of continuous presence.

But manipulation would be possible even under the government's interpretation. Suppose that the government issues a notice to appear without the date and time. The notice must be served on the noncitizen, so he or she would know that the government is intending to initiate removal proceedings. With this knowledge, the noncitizen could try to move the

11

proceedings to another immigration court. This effort could stall the issuance of a notice of hearing because a new immigration court would need to set the hearing. And if the new immigration court has a backlog, the delay could be considerable. So the purpose of the stop-time rule could be thwarted even under the government's interpretation.[3]

The government also points to the text of § 1229(a), which requires the government to provide noncitizens with "written notice." 8 U.S.C. § 1229(a)(1). But the phrase "written notice" is immediately followed by a parenthetical phrase: "(in this section referred to as a 'notice to appear')." 8 U.S.C. § 1229(a)(1). This parenthetical phrase clarifies that written notice is to be provided in the notice to appear.

Despite the parenthetical phrase, the government contrasts the reference to "written notice" with the language of § 1229(a)(2). As the government points out, § 1229(a)(2) contains a singular article, requiring "*a* written notice" of a change in the time of the proceedings. 8 U.S.C.

---

[3] The government also argues that interpreting "a notice to appear" to refer to a single document creates "a windfall for noncitizens and unnecessarily interferes with Congress's intent." *Lopez v. Barr*, 925 F.3d 396, 410 (Callahan, J., dissenting), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.). But it is not our job to interpret the statutes based on our views about what could constitute a "windfall." Congress intended to base the stop-time rule on the new statutory creature, a single notice to appear satisfying all of the requirements of § 1229(a)(1). If Congress's creation resulted in a windfall, the correction must come from Congress—not us.

§ 1229(a)(2)(A) (emphasis added). In contrast, the language in § 1229(a)(1) has no article, either singular or plural, before the phrase "written notice."

The government's parsing of § 1229(a)(1) disregards the entirety of the provision. *Pereira* considered the entirety of the provision—"written notice (in this section referred to as a 'notice to appear')"—and defined the term as a document that includes the time of the removal hearing. 138 S. Ct. 2105, 2116 (2018); *see* p. 7, above. So the omission of an article before "written notice" does not affect our analysis.

The government downplays the significance of the phrase "referred to as a 'notice to appear,'" pointing out that this phrase appears only in a parenthetical. But we should "give effect to every word of a statute wherever possible," *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004), including words in a parenthetical, *United States v. Thomas*, 939 F.3d 1121, 1126–27 (10th Cir. 2019).

According to the government, the parenthetical phrase constitutes shorthand for all of the information that must be communicated under § 1229(a)(1), whether in one document or multiple documents. But the Supreme Court rejected this interpretation in *Pereira v. Sessions*, holding that the phrase "notice to appear" defines a single document that contains all of the required information. 138 S. Ct. 2105, 2116 (2018); *see also Lopez v. Barr*, 925 F.3d 396, 403 (9th Cir. 2019) ("[T]he Supreme Court

13

[in *Pereira*] held that Section 1229(a)(1) *defines* what a notice to appear is, and that the definition is imported every time the term 'notice to appear' is used in the statute—especially when it is used in the stop-time rule."), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.).[4]

The government argues that we should not rely on *Pereira v. Sessions* because its facts differ from ours. The noncitizen in *Pereira* never received a notice of hearing, so the Supreme Court did not need to decide whether a notice of hearing could trigger the stop-time rule. 138 S. Ct. 2105, 2112 (2018).

---

[4] The Ninth Circuit has decided to convene en banc to rehear *Lopez v. Barr*. As a result, the panel opinion in *Lopez* cannot be cited as precedent in the Ninth Circuit. *Lopez v. Barr*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.); Ninth Cir. R. 35–3.

Though *Pereira* is distinguishable on its facts,[5] the Court's reasoning supports our interpretation of the term "a notice to appear."[6] When

[5]     Given these factual differences, the government relies on pre-*Pereira* opinions from other circuit courts. Three circuits (the Fifth, Eighth, and Ninth Circuits) have held that § 1229(a)(1) is satisfied by the combination of an incomplete notice to appear and a notice of hearing. *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Haider v. Gonzales*, 438 F.3d 902, 907–08 (8th Cir. 2006); *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009), *overruled by Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.). And three other circuits (the Second, Third, and Seventh Circuits) have held that the combination of documents triggered the stop-time rule. *Guamanrrigra* v. *Holder*, 670 F.3d 404, 409–10 (2nd Cir. 2012); *Orozco-Velasquez v. Att'y Gen.*, 817 F.3d 78, 83–84 (3rd Cir. 2016); *abrogated*, *Guadalupe v. Attorney Gen.*, ___ F.3d ___, No. 19-2239, 2020 WL 913242, at *1, 4 (3d Cir. Feb. 26, 2020); *Dababneh v. Gonzales*, 471 F.3d 806, 808–10 (7th Cir. 2006).

But these holdings arguably conflict with *Pereira*, which concluded that omission of the time prevents a document from functioning as a notice to appear under § 1229(a) and triggering the stop-time rule. *Pereira v. Sessions*, 138 S. Ct. 2105, 2116 (2018). Given this conclusion, the Third and Ninth Circuits have held that their pre-*Pereira* opinions have been abrogated. *Guadalupe v. Attorney Gen.*, ___ F.3d ___, No. 19-2239, 2020 WL 913242, at *1, 4 (3d Cir. Feb. 26, 2020) (holding that the Third Circuit's previous precedent, *Orozco-Velasquez*, had been abrogated by *Pereira*); *Lopez v. Barr*, 925 F.3d 396, 400 (9th Cir. 2019) (stating that the Ninth Circuit's previous precedent, *Popa*, had been overruled by *Pereira*), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.).

We need not address the viability of the various pre-*Pereira* opinions in other circuits.

[6]     In *Pereira*, the government raised practical concerns with providing the date and time in the notice to appear, including the difficulty of assigning each noncitizen a date and time without consulting the immigration court. 138 S. Ct. 2105, 2118–19 (2018). But the Supreme Court concluded that "[t]hese practical considerations are meritless and do not justify departing from the statute's clear text." *Id*. at 2118; *see also*

15

interpreting the same term, the *Pereira* Court held that the stop-time rule is not triggered by a notice to appear that omits the time because the document is "not a 'notice to appear under § 1229(a).'" *Pereira v. Sessions*, 138 S. Ct. 2105, 2110, 2116 (2018). The Court based this holding on its interpretation of the statutory phrase "(written notice (referred to as a 'notice to appear'))." *See* pp. 13–14, above. This interpretation applies equally here because Mr. Banuelos's putative notice to appear was missing the date and time.[7]

## 5. Conclusion

Given the unambiguous language of the pertinent statutes, the stop-time rule is not triggered by the combination of an incomplete notice to

---

*Guadalupe v. Attorney Gen.*, ___ F.3d ___, No. 19-2239, 2020 WL 913242, at *5 (3d Cir. Feb. 26, 2020) (stating that a requirement for "one complete" notice to appear does not prevent the Department of Homeland Security from waiting to send the notice to appear until after the Department has compiled all of the information required in § 1229(a)).

[7] Since *Pereira* was decided, two other circuit courts have held that an incomplete notice to appear could not be perfected by a later document stating the date and time. *Guadalupe v. Attorney Gen.*, ___ F.3d ___, No. 19-2239, at *2, 5 (3d Cir. Feb. 26, 2020) (holding that for purposes of the stop-time rule, a deficient notice to appear cannot be "cure[d]" or "supplemented" by a subsequent notice of hearing); *Lopez v. Barr*, 925 F.3d 396, 404 (9th Cir. 2019) (stating that substantive defects in a notice to appear cannot be cured by a notice of hearing that does not in itself satisfy all of the requirements of § 1229(a)(1)), *reh'g en banc granted*, 948 F.3d 989 (9th Cir. 2020) (Thomas, C.J.).

16

appear and a notice of hearing. We thus grant the petition for review and remand to the Board for further proceedings.