**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MOISES MAGANA ARIAS,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9541
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **EID**, Circuit Judges.
_____

Moises Magana Arias, a native and citizen of Mexico, petitions for review of

the final order of removal in which the Board of Immigration Appeals ("BIA")

denied his motion to reconsider. Exercising jurisdiction under 8 U.S.C. § 1252, we

grant the petition for review in part, deny in part, and remand to the BIA for further

proceedings consistent with this decision.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Mr. Magana Arias has entered the United States without inspection and been removed several times. He claims he has lived in the United States since he last entered in December 2000. His fifteen-year-old child is a United States citizen.

In March 2010, the Department of Homeland Security ("DHS") instituted removal proceedings by serving a Notice to Appear ("NTA") on Mr. Magana Arias. Rather than specify the date and time of the removal hearing, the NTA listed the date and time as "to be set." Admin. R. at 382. About two weeks later, DHS served a Notice of Hearing ("NOH") directing him to appear before the Immigration Judge ("IJ") on April 23, 2010. He appeared at all scheduled hearings.

Mr. Magana Arias admitted the allegations in the NTA and conceded inadmissibility. He applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] To support his applications, he testified about threats he received from criminals he arrested during his five years as a police officer in Mexico, the kidnapping of his nephew by organized criminals, and a neighbor's threats to his brother. The IJ deemed Mr. Magana Arias generally credible but found that (1) his asylum application was time-barred; (2) in any event, he had not established the requirements for asylum and withholding of removal; and (3) he had not established, for purposes of his CAT claim, that he probably would

---

[1] Mr. Magana Arias initially sought cancellation of removal as well, but he later withdrew his application based on his understanding that the NTA triggered the stop-time rule and ended his period of continuous physical presence—and thus his eligibility for cancellation.

suffer torture upon return to Mexico. The IJ denied relief and ordered him removed to Mexico.

Mr. Magana Arias appealed the IJ's decision to the BIA. The BIA upheld the IJ's finding of removability and dismissed the appeal. The BIA echoed the IJ's reasoning, except it did not address the timeliness of the asylum application because it agreed with the IJ's alternative grounds for denial of asylum.

While the appeal to the BIA was pending, the Supreme Court issued *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). *Pereira* addressed the impact of a deficient NTA on the "stop-time rule." Noncitizens who are subject to removal proceedings and who have accrued 10 years of continuous physical presence in the United States may be eligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1). Under the stop-time rule, however, the period of continuous presence ends when the government serves an NTA. *See id.* § 1229b(d)(1)(A). *Pereira* held that when an NTA fails to designate the specific time and place of a removal proceeding, it does not trigger the stop-time rule for cancellation of removal. 138 S. Ct. at 2110. As noted, Mr. Magana Arias's NTA lacked that information. The BIA did not consider the stop-time issue in its initial decision.

Mr. Magana Arias filed a motion to reconsider the BIA's decision dismissing his appeal. He argued that he may now be eligible to apply for cancellation of removal based on *Pereira* and asked for a remand to the IJ. He also sought reconsideration on several issues relating to his applications for asylum, withholding of removal, and protection under CAT. The BIA found no error of fact or law in its

3

previous decision and denied the motion to reconsider. Mr. Magana Arias filed this petition for review.

## II. **STANDARD OF REVIEW**

"A motion to reconsider . . . is available to raise errors of fact or law committed by the BIA in its prior decision." *Mahamat v. Gonzales*, 430 F.3d 1281, 1283 n.3 (10th Cir. 2005); *see also* 8 U.S.C. § 1229a(c)(6)(C) (stating that a motion to reconsider "shall specify the errors of law or fact in the previous order"). A party also may use a motion to reconsider to "ask[] the agency to consider a change in the law." *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 n.3 (10th Cir. 2015) (internal quotation marks omitted).

"We review the BIA's decision on a motion to reconsider for an abuse of discretion." *Id.* at 990. An abuse of discretion occurs when the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted). The BIA also abuses its discretion when it makes a legal error. *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017). Conversely, "[t]here is no abuse of discretion when the BIA's rationale is clear, there is no departure from established policies, and its statements are a correct interpretation of the law, even when the BIA's decision is succinct." *Rodas-Orellana*, 780 F.3d at 990 (internal quotations omitted).

4

## III. DISCUSSION

Mr. Magana Arias argues the BIA abused its discretion by (A) failing to remand his case to allow the IJ to consider his eligibility for cancellation of removal in light of *Pereira*; (B) not reconsidering whether he has suffered, or is likely to suffer, persecution because of his membership in a particular social group ("PSG") in light of intervening BIA precedent; (C) providing only summary, conclusory statements in denying reconsideration of the timeliness of his asylum application; and (D) failing to provide a rational explanation for denying reconsideration of his eligibility for CAT protection.

### A. *Cancellation of Removal and the Stop-Time Rule*

As explained above, Mr. Magana Arias asked the BIA to remand his case to allow the IJ to consider his eligibility for cancellation of removal in light of *Pereira*. The BIA rejected his *Pereira* argument, relying on its post-*Pereira* decision in *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520 (BIA 2019), to conclude he was not eligible for cancellation of removal. In *Mendoza-Hernandez*, the BIA held the service of an NOH containing the time and place of the initial removal hearing cures a deficient NTA and triggers the stop-time rule. *Id.* at 535. The NOH issued to Mr. Magana Arias contained that information, so the BIA relied on *Mendoza-Hernandez* to conclude the NTA and NOH together stopped his accrual of continuous physical presence—8 months before he fulfilled the 10-year requirement.

After briefing concluded in this appeal, we issued a published decision rejecting the reasoning of *Mendoza-Hernandez* and concluding "the stop-time rule is

5

triggered by one complete notice to appear rather than a combination of documents." *Banuelos-Galviz v. Barr*, 953 F.3d 1176, 1178 (10th Cir. 2020). Thus, in this circuit, "the stop-time rule is not triggered by the combination of an incomplete notice to appear and a notice of hearing." *Id*. at 1184. The BIA's conclusion that the stop-time rule applies to Mr. Magana Arias conflicts with *Banuelos-Galviz* and therefore constitutes an abuse of discretion.

### B. *Membership in a Particular Social Group*

To qualify for asylum or withholding of removal, a noncitizen must establish he is a refugee by showing "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (explaining the burden of proof for asylum applicants).[2] If a noncitizen relies on membership in a PSG, as Mr. Magana Arias did, there must be a "nexus" between that membership and persecution. *Niang v. Gonzales*, 422 F.3d 1187, 1200-01 (10th Cir. 2005). This means "the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Id*. at 1200.

Mr. Magana Arias sought asylum based on his membership in two PSGs: (1) former policemen and (2) his family. The IJ thoroughly analyzed both alleged PSGs and denied asylum after finding he did not establish past persecution, a

---

[2] The proof required for withholding of removal is higher than it is for asylum. An applicant who fails to establish eligibility for asylum therefore cannot qualify for withholding of removal. *See Ustyan v. Ashcroft*, 367 F.3d 1215, 1218 (10th Cir. 2004).

6

well-founded fear of future persecution, or a nexus to a protected ground. The BIA agreed.

In his motion to reconsider, Mr. Magana Arias faulted the IJ and the BIA for not adequately addressing whether former policemen and his family constitute PSGs. He also asked the BIA to remand to the IJ for additional fact-finding because the intervening decision in *In re W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189 (BIA 2018), changed the landscape for PSGs. The BIA generally denied the motion to reconsider, concluding that Mr. Magana Arias had not articulated any legal or factual error in its previous decision. It specifically declined to reconsider his arguments regarding PSGs because the nexus between membership and persecution was lacking.

In his petition for review, Mr. Magana Arias argues the BIA failed to adequately analyze his PSGs and abused its discretion by not providing a sufficient rationale for its findings. The administrative record reveals to the contrary. The BIA's reasoning is evident. In its initial decision affirming the IJ, the BIA appropriately incorporated the IJ's detailed reasoning. *See Neri-Garcia v. Holder*, 696 F.3d 1003, 1008-09 (10th Cir. 2012) (allowing us to consult the IJ's more complete explanation of the grounds provided by the BIA when a single BIA member affirms the IJ's decision). In denying the motion to reconsider, the BIA found no reason to change its affirmance.

Mr. Magana Arias also argues the BIA should have remanded for the IJ to reconsider his PSGs in light of *In re W-Y-C- & H-O-B-*. There, the BIA held that an applicant seeking asylum or withholding of removal based on membership in a PSG

7

must clearly indicate the exact delineation of any proposed PSG on the record before the IJ. It also said it generally will not address a newly articulated PSG that was not advanced before the IJ. Mr. Magana Arias has not shown how this decision helps him. Indeed, the decision seems to make requirements *more* stringent for PSGs, not less. Moreover, the BIA here acted consistently with the limitations set forth in *In re W-Y-C- & H-O-B-* when it refused to provide relief. *See* 27 I. & N. Dec. at 192 ("[W]e decline to remand proceedings for the [IJ] to make factual findings regarding the respondent's new [PSG], and we will not consider this group in the first instance on appeal.").

Finally, Mr. Magana Arias argues in his reply brief that the BIA lacked jurisdiction to factually evaluate his PSGs in denying the motion to reconsider. This argument conflicts with another new argument in his reply brief: "[T]he [BIA] dismissed [his] articulated [PSGs] without rendering the 'fact-based inquiry' and 'case-by-case' analysis required . . . . " Reply Br. at 20. In any event, we will not consider arguments raised for the first time in a reply brief. *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008).

For these reasons, the BIA did not abuse its discretion in denying reconsideration of Mr. Magana Arias's PSG arguments.

## C. *Timeliness of Asylum Application*

A noncitizen seeking asylum must file an application "within 1 year after the date of . . . arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). A late filing may be excused, however, if the noncitizen demonstrates "either the existence of changed

8

circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D).

The IJ found Mr. Magana Arias's asylum application was time-barred and, in any event, he had not established past persecution, a well-founded fear of future persecution, or a nexus to a protected ground. In its initial decision, the BIA stated it was "unnecessary" to address whether the application was time-barred because the IJ "properly denied the . . . asylum application on alternative grounds." Admin. R. at 32. It then cited the "general rule" that "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." *Id.* (quoting *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam)).

In his motion to reconsider, Mr. Magana Arias sought a remand for the IJ to consider whether he met the timeliness exception for changed or extraordinary circumstances based on his nephew's kidnapping or his "significant psychological issues." *Id.* at 20. The BIA denied the motion, explaining it "did not need to reach that issue" because he "is ineligible for asylum on alternative grounds." *Id.* at 4. Mr. Magana Arias now argues the BIA's statement was so conclusory as to constitute an abuse of discretion. It was not.

In denying this portion of the motion to reconsider, the BIA referred back to the reasoning in its initial decision. Although the BIA's rationale is succinct, it is clear, adheres to established policies, and correctly interprets the law. *See Rodas-Orellana*, 780 F.3d at 990. It is not unusual for the BIA to bypass the

9

timeliness question and to decide an appeal on the merits, even if the IJ denied asylum based on timeliness *and* the merits. *See, e.g.*, *Ba v. Mukasey*, 539 F.3d 1265, 1268 (10th Cir. 2008).

## D. *Protection under CAT*

To receive CAT protection, Mr. Magana Arias had to "demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (internal quotation marks omitted). The IJ found he did not satisfy this standard. The IJ noted the lack of record evidence that Mr. Magana Arias would face torture with the acquiescence of Mexico's government and rejected the argument that police corruption is enough to meet this standard. The BIA conducted its own analysis and upheld the IJ's denial of relief.

In seeking reconsideration of this ruling, Mr. Magana Arias merely repeated arguments the BIA had soundly rejected. The BIA denied the motion to reconsider, explaining that it "discern[ed] no clear error in the [IJ's] conclusion that the Mexican government does not acquiesce in harm to persons such as [Mr. Magana Arias] and, to the contrary, takes measures to curb such criminality." Admin. R. at 4. Mr. Magana Arias now attacks the depth of the BIA's explanation without advancing any new arguments. But the BIA's rationale is clear, and it correctly interprets the law. Mr. Magana Arias did not specify any errors of law or fact, and the BIA did not abuse its discretion in refusing to revisit his claim for protection under CAT.

## IV.   CONCLUSION

We grant the petition for review on the stop-time issue and remand to the BIA to address Mr. Magana Arias's motion to reconsider in light of *Banuelos-Galviz.*  We deny the remainder of the petition for review.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

11