**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLOS BARBECHO-CAJAMORCA,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9577
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Carlos Barbecho-Cajamorca, a native and citizen of Ecuador, appealed to the

Board of Immigration Appeals (BIA) from a decision by an immigration judge (IJ)

denying his motion to reopen his removal proceedings. While his appeal was

pending, Petitioner filed a motion to remand so that he could apply for cancellation

of removal in light of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). After the BIA

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

dismissed his appeal and denied his motion to remand, he petitioned this court for review. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## BACKGROUND

In 2007, Petitioner was apprehended while crossing the border between Mexico and Arizona and was taken into custody by immigration officials. The Department of Homeland Security (DHS) initiated removal proceedings by serving him with a notice to appear (NTA), alleging he was removable for illegally entering the United States. The NTA indicated his initial appearance before an IJ would be at a date and time "to be set." Admin. R. at 817. The NTA also stated that Petitioner was required to provide his mailing address and to "notify the Immigration Court immediately by using Form EOIR-33 whenever [he] change[d] [his] address." *Id.* at 818. The NTA warned he could be ordered removed if he failed to attend his hearing. Petitioner signed the NTA, requested an immediate hearing, and confirmed he received notice in Spanish of the consequences for failing to appear.

Upon his release from custody, DHS reminded Petitioner of his obligation to keep his address current and gave him a change-of-address form. Petitioner provided an address in New Jersey, but he and his family traveled to New York, where they lived for the next several years. He did not complete a change-of-address form or otherwise notify DHS of his New York address. On May 30—shortly after his release from custody—DHS sent a Notice of Hearing (NOH) to Petitioner at the New Jersey address, informing him that his hearing was scheduled for August 1. The NOH was not returned as undeliverable. On August 2, DHS sent him a second NOH

at the New Jersey address, informing him that his hearing would be held on February 20, 2008. The second NOH also was not returned as undeliverable. After Petitioner failed to appear at that hearing the IJ ordered him removed *in absentia*.

In 2013, Petitioner was apprehended by law enforcement and released on an Immigration and Customs Enforcement (ICE) supervision order. He alleges this is when he first learned of the 2008 removal order. In 2018, after ICE granted several stays of removal, Petitioner filed a motion to reopen his proceedings, asserting that conditions in Ecuador had worsened for indigenous people and that he should be permitted to file for asylum and withholding of removal. The IJ denied his motion.

While his appeal to the BIA was pending, the Supreme Court held that a putative NTA that failed to designate the time or place for the removal hearing did not terminate the period of continuous physical presence in the United States for purposes of cancellation of removal under 8 U.S.C. § 1229b(b)(1). *Pereira*, 138 S. Ct. at 2109-10. Petitioner then filed a motion to remand, arguing that his original NTA was defective under *Pereira* and that, therefore, (1) the IJ lacked jurisdiction to order his removal; and (2) he was eligible for cancellation of removal, having accumulated more than ten years of continuous physical presence in the United States. The BIA dismissed his appeal from the IJ's denial of his motion to reopen and denied his motion to remand. Petitioner timely petitioned for review.

## DISCUSSION

### I.  Standard of Review

We review the denial of both motions to reopen and motions to remand for abuse of discretion. *See Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017) (motion to reopen); *Neri-Garcia v. Holder*, 696 F.3d 1003, 1009, 1011 (10th Cir. 2012) (motion to remand). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Infanzon v. Ashcroft*, 386 F.3d 1359, 1362 (10th Cir. 2004) (internal quotation marks omitted). In addition, "[w]e review the BIA's legal determinations de novo and its findings of fact under the substantial evidence standard." *Ramirez-Coria v. Holder*, 761 F.3d 1158, 1161 (10th Cir. 2014) (internal quotation mark omitted). Finally, when, as here, a single BIA member issues a brief order on appeal, "we may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (internal quotation marks omitted).

### II.  Motion to Reopen

Petitioner first contends he demonstrated changed conditions in Ecuador and that the BIA thus erred in upholding the denial of his motion to reopen on that basis.[1] We disagree.

---

[1] Petitioner does not contest the denial of his motion to reopen to the extent it was based on a lack of notice of his removal hearing.

Generally, an alien may file one motion to reopen his removal proceedings. 8 U.S.C. § 1229a(c)(7)(A).  The motion must be filed within ninety days of the removal order unless the alien intends to apply for asylum and the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C); *see also* 8 C.F.R. § 1003.23(b)(3).  The motion to reopen must "state the new facts that will be proven at a hearing to be held if the motion is granted, and [] be supported by affidavits or other evidentiary material."  8 U.S.C. § 1229a(c)(7)(B).  The "new facts . . . must demonstrate that if proceedings before the IJ were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case."  *Maatougui v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013) (brackets and internal quotation marks omitted).  Even if the alien establishes a prima facie case for relief, the IJ still "has discretion to deny a motion to reopen."  8 C.F.R. § 1003.23(b)(3).  Motions to reopen are "disfavored," and the alien "bears a heavy burden" in showing an abuse of discretion.  *Maatougui*, 738 F.3d at 1239 (brackets and internal quotation marks omitted).

Petitioner moved to reopen his proceedings based on a "rising level of aggression" in Ecuador "against individuals such as himself, who are of an indigenous race, but who have ventured out of their 'place' in society in order to advance their careers or positions in life."  Admin. R. at 245.  In support of his motion, Petitioner provided: (1) his affidavit, which included statements his mother

5

purportedly made to him regarding recent burglaries committed against indigenous families in his hometown in Ecuador; (2) affidavits from his mother-in-law and sister-in-law regarding his assault and harassment by gang members prior to his departure from Ecuador in 2007; and (3) documentary evidence regarding the status and treatment of indigenous people in Ecuador.

In upholding the IJ's decision, the BIA held that Petitioner had "not established materially changed conditions in Ecuador" since 2008, concluding his evidence reflected "incremental variations in the government['s] and society's attitudes to indigenous people," and a change in his "personal circumstances," including his career advancement and his increased awareness of the extent and severity of the mistreatment of indigenous people. Admin. R. at 4.

Petitioner concedes indigenous people in Ecuador suffered discrimination and harassment "[a]t the time of [his] removal proceedings" in 2008 and that "there has always been tension between indigenous people and the rest of society in Ecuador." Pet. Opening Br. at 38. But he contends: (1) "he did not have the wherewithal at that time to understand that his experiences were part of the society structure of Ecuador rather than simply personal disputes" and only recently began to "comprehend the pervasive society resentment towards indigenous people in Ecuador," *id.*; and (2) the situation "had escalated to the point of violence," *id.* at 39, with indigenous people "being targeted" and law enforcement being "unhelpful," *id.* at 38.

The BIA correctly concluded that Petitioner's contention that he has developed a greater awareness of structural and systemic issues affecting indigenous people in

6

Ecuador reflects a change in his own circumstances, not a change in the country's conditions. The same is true of his allegation that, by leaving "behind the traditional indigenous role" and seeking to advance his station in life, "*he has become* precisely the type of indigenous person" targeted in Ecuador. *Id.* at 39 (emphasis added); *see also* Admin. R. at 249 (alleging a risk of "greater aggression . . . *in light of his activities* . . . since leaving Ecuador" (emphasis added)). Thus, the BIA did not abuse its discretion in denying the motion to reopen on this basis. *See Wei v. Mukasey*, 545 F.3d 1248, 1256 (10th Cir. 2008) (explaining that while a change in personal circumstances may permit a successive asylum application, an alien may not apply for asylum on the basis of changed personal circumstances after his removal has been ordered and the ninety-day period for moving to reopen has expired, unless he can show changed country conditions supporting the motion to reopen).

As for his claim that conditions in Ecuador have changed because they have "escalated to the point of violence," Pet. Opening Br. at 39, Petitioner offers only conclusory statements and a citation to nearly 100 pages of the administrative record, without any explanation or elaboration. We are under no obligation to consider such undeveloped arguments or to search the record for evidence to support them. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (holding that the appellant's "superficial argument [was] insufficient to garner appellate review" and that this court "need not sift through the record to find evidence to support a party's argument" (brackets and internal quotation marks omitted)); *see also* Fed. R. App. P. 28(a)(8)(A) (providing that the argument section of the appellant's

brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies.").

In any event, the portions of the record he cites do not demonstrate a material change in Ecuador's conditions since Petitioner's hearing in 2008. The affidavits from his in-laws discuss events that occurred before he came to the United States in 2007. And the documentary evidence, including academic publications, addresses data and research largely pre-dating 2008 and describes conditions in effect even before 2008. We recognize that the existence of persecution in a particular country "does not prevent [an alien] from showing a change in country conditions due to a significant increase in the level of persecution." *Qiu*, 870 F.3d at 1204. But we conclude that the BIA did not err in finding Petitioner's evidence "insufficient to demonstrate" changed country conditions, Admin. R. at 4, and that it therefore did not abuse its discretion in denying his motion to reopen on that basis.

## III.    Motion to Remand

Petitioner next contends the BIA erred in denying his motion to remand to allow him to apply for cancellation of removal in light of *Pereira*.[2] As we recently noted, "[t]he same legal standard applies to motions to reopen and motions to remand," even when, as here, the motion "is filed during the pendency of an appeal"

---

[2] Petitioner acknowledged in his petition for review that we have rejected the argument he made before the BIA that the defective NTA deprived the IJ of jurisdiction. *See  Lopez-Munoz v. Barr*, 941 F.3d 1013, 1017 (10th Cir. 2019); *see also Martinez-Perez v. Barr*, 947 F.3d 1273, 1278 (10th Cir. 2020) (explaining that the rules regarding NTAs are non-jurisdictional claim-processing rules). He thus does not pursue that argument.

and is "styled as a motion to remand." *Galeano-Romero v. Barr*, No. 19-9585,
__ F.3d __, __, 2020 WL 4458998, at *6 (10th Cir. Aug. 3, 2020) (internal quotation
marks omitted).

To be eligible for cancellation of removal, he needed to show: (1) ten years of
continuous physical presence in the United States immediately prior to the
application; (2) "good moral character during such period"; (3) the absence of any
convictions of certain offenses; and (4) that a qualifying relative who is a United
States citizen or lawful permanent resident would suffer "exceptional and extremely
unusual hardship" if he is removed. 8 U.S.C. § 1229b(b)(1). Petitioner alleged that
he satisfied the moral character and criminal record requirements and that his
removal would cause the requisite hardship to his youngest child, who is a United
States citizen. He also alleged that he had accumulated more than ten years of
continuous physical presence because his defective 2007 NTA did not terminate his
continuous physical presence. *See Pereira*, 138 S. Ct. at 2110 (holding a putative
NTA that failed to designate the time or place for the removal hearing did not trigger
the stop-time rule under § 1229b(d)(1)(A)).

The BIA denied Petitioner's motion to remand on three alternative grounds. It
first concluded that to the extent the motion was a motion to reopen, it was "time and
number-barred." Admin. R. at 5 (citing § 1229a(c)(7)). The BIA also found
Petitioner did not comply with "the regulatory requirements" for motions to reopen
because he failed to attach his cancellation application to the motion and the alleged
"time-sensitive nature" of the motion was an "insufficient" reason for waiting until

9

his reply brief to submit the application. *Id.* at 6 (citing 8 C.F.R. § 1003.2(c)(1)). Finally, the BIA held that Petitioner failed to establish a prima facie case for cancellation, concluding: (1) he could not establish ten years of continuous physical presence because the NOH "cured" the defective NTA, thereby triggering the stop-time rule and cutting off the period of continuous physical presence, *id.* (citing *Matter of Mendoza-Hernandez*, 27 I. & N. Dec. 520, 535 (BIA 2019)); and (2) "he did not provide a prima facie case as to how his qualifying relative would suffer the requisite level of hardship," *id.* (citing *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001)).

To prevail on his petition for review, Petitioner must demonstrate that the BIA abused its discretion on each of its alternative rulings outlined above. *See Galeano-Romero*, __ F.3d at __ n.11, 2020 WL 4458998, at *6 n.11. But, as discussed more fully below, we lack jurisdiction to review the BIA's discretionary hardship decision, so Petitioner cannot establish that the BIA abused its discretion in denying his motion to remand on that basis. And because he cannot show error on that basis, we need not address the BIA's alternative rulings.[3]

"There is no algorithm for determining when a hardship is 'exceptional and extremely unusual.' The decision regarding when hardship has reached that level is a

---

[3] Nonetheless, we agree the BIA erred in concluding that the NOH triggered the stop-time rule. *See Banuelos-Galviz v. Barr*, 953 F.3d 1176, 1178-80 (10th Cir. 2020) (rejecting the reasoning in *Mendoza-Hernandez* and holding "the stop-time rule is triggered by one complete notice to appear rather than a combination of documents," including a subsequent NOH).

10

judgment call." *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003). Therefore, the BIA's decision regarding hardship to an alien's qualifying relative is discretionary. *See id.* And because under § 1252(a)(2)(B)(i) we lack "jurisdiction to review the discretionary aspects of a decision concerning cancellation of removal," we cannot review the BIA's determination that there is insufficient hardship for cancellation. *Galeano-Romero*, __ F.3d at __, 2020 WL 4458998, at \*3 (internal quotation marks omitted). This is true not only for the BIA's decision on appeal from an IJ's denial of a cancellation application, *see id.*, but also for its denial of a motion to reopen premised on a cancellation application, *see Alzainati v. Holder*, 568 F.3d 844, 848-49 (10th Cir. 2009) (explaining that an alien cannot "indirectly obtain judicial review of a discretionary ruling that is not directly reviewable" and holding that "[b]ecause § 1252(a)(2)(B)(i) precludes our review of an 'exceptional and extremely unusual hardship' determination under § 1229b(b)(1)(D), it also precludes our jurisdiction to review the BIA's denial of a motion to reopen because the alien still has failed to show the requisite hardship").

Like the petitioner in *Galeano-Romero,* Petitioner here has not raised a constitutional claim or question of law in connection with the hardship issue such that we might have jurisdiction.[4] *See* __ F.3d at __, 2020 WL 4458998, at \*3-6.

---

[4] Petitioner contends the BIA "did not review all of the evidence in the record." Pet. Opening Br. at 35. We have "limited jurisdiction to review the propriety of the BIA's failure to consider the evidence and, in an appropriate case, can require consideration of the evidence." *Alzainati*, 568 F.3d at 850. But our jurisdiction to do so arises when "due process rights are implicated," *id.*, and Petitioner made no due process argument. In any event, the BIA acknowledged

11

And as in that case, we lack jurisdiction to consider Petitioner's challenges to the BIA's discretionary hardship decision concerning cancellation of removal. *Id*.; *see also Arambula-Medina v. Holder*, 572 F.3d 824, 827-28 (10th Cir. 2009) (rejecting alien's attempts to couch challenge to BIA's decision as a question of law or a constitutional question and concluding court lacked jurisdiction to review "the discretionary aspects of a decision concerning cancellation of removal"). Petitioner therefore cannot establish that the BIA abused its discretion in concluding he did not establish a prima facie case for cancellation and in denying his motion to remand on that basis.

## CONCLUSION

The petition for review is denied.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

Petitioner provided evidence with his reply brief, and Petitioner has offered only a conclusory argument that the BIA ignored his evidence.

12