FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JORGE RAFAEL ZALDIVAR-
MENDIETA, a/k/a Jorge Rafael
Saldivar-Mendieta,

     Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 19-9595
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **BACHARACH**, Circuit Judges.
_____

    Jorge Rafael Zaldivar-Mendieta, a native and citizen of Mexico, petitions for

review of an order by the Board of Immigration Appeals (BIA) denying his motion to

reopen removal proceedings to consider an application for cancellation of removal.

We grant the petition and remand for further proceedings.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

On August 5, 2008, the Department of Homeland Security served a Notice to Appear (NTA) on Mr. Zaldivar, charging that he had entered the United States unlawfully in or about 2000. The NTA ordered Mr. Zaldivar to appear before an immigration judge (IJ) at a date and time "to be set." Admin. R., Vol. 2 at 993. Mr. Zaldivar appeared at subsequent hearings before the IJ, at which he admitted the allegations in the NTA (except he claimed his entry date was December 1997) and conceded he was removable from this country. He also filed an application for cancellation of removal.

To be eligible for discretionary cancellation of removal, a noncitizen must, inter alia, establish continuous physical presence in the United States for at least ten years before the application. 8 U.S.C. § 1229b(b)(1)(A). The IJ determined that under the "stop-time rule," service of the NTA on August 5, 2008 terminated the accrual of Mr. Zaldivar's continuous physical presence in the United States. *See id.* § 1229b(d)(1)(A) (stating period of continuous physical presence is deemed to end "when the alien is served a notice to appear"). To meet the requirement of ten years of continuous physical presence, he would therefore have to show that he had been continuously physically present in this country since August 5, 1998. But the IJ concluded Mr. Zaldivar failed to meet his burden because there were "numerous inconsistencies regarding his entry date" and insufficient evidence to establish his continuous presence in this country during the ten-year period. Admin R., Vol. 1 at 281.

2

Mr. Zaldivar appealed to the BIA. Along with his appeal, he filed a motion to remand, seeking to present additional evidence concerning the length of his physical presence in the United States. The BIA dismissed his appeal and denied the motion to remand.

Mr. Zaldivar thereafter filed two motions to reopen, seeking to revive his cancellation claim. His second motion relied on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). In *Pereira*, the Supreme Court held that an NTA that fails to designate the specific time and place of a removal proceeding does not trigger the stop-time rule. *See id.* at 2109-10. Mr. Zaldivar argued that because the NTA in his case had failed to designate the specific time and place of removal proceedings, the IJ and the BIA lacked jurisdiction over the proceedings. He also argued that *Pereira* entitled him to further consideration of his application for cancellation of removal, which was no longer barred by the stop-time rule. The BIA denied both motions to reopen, concluding that the proper service of a Notice of Hearing (NOH) on August 13, 2008, ended the accrual of Mr. Zaldivar's continuous physical presence in the United States.

Mr. Zaldivar then filed his current, renewed motion to reopen, again relying on *Pereira*, asking the BIA to reopen proceedings or reconsider its prior denial. Citing its own precedent, the BIA rejected his argument that the NTA in his case did not trigger the stop-time rule. It again reasoned that the NTA had been "perfected by the subsequent service of [the NOH] specifying th[e] missing information and that the

3

combination of documents trigger[ed] the stop-time rule." Admin. R. Vol. 1 at 4 (internal quotation marks omitted).

Mr. Zaldivar filed his petition for review on November 12, 2019. In connection with the petition he sought an emergency stay of removal, which we denied. On January 15, 2020, he was removed to Mexico.

This court subsequently rejected the BIA's "two-step" process for satisfying the stop-time rule, holding that "the stop-time rule is triggered by one complete notice to appear rather than a combination of documents." *Banuelos-Galviz v. Barr*, 953 F.3d 1176, 1178 (10th Cir. 2020), *cert. denied*, 2021 WL 1725170 (U.S. May 3, 2021) (No. 20-356). Following our decision in *Banuelos-Galviz*, Mr. Zaldivar filed a renewed motion for stay of removal in this court. He argued that although he had been physically removed from the United States, this court should order the legal impacts of his physical removal to be stayed, to prevent the government from arguing that his involuntary departure had made him ineligible for cancellation relief. Alternatively, he asked that we grant a stay of removal, made retroactively effective to the date of his departure, to allow for that removal to be legally invalidated and for him to be returned to the United States.

The government also filed a motion in response to *Banuelos-Galviz*, asking us to remand this case to the BIA in lieu of requiring it to file an answer brief on the merits. The government argued that a remand would permit the BIA to determine the

4

effect, if any, of *Banuelos-Galviz* on the discretionary exercise of its sua sponte authority to reopen proceedings.[1]

Mr. Zaldivar opposed the BIA's request for a "clean" remand. He moved instead for a remand with specific instructions to the government to "return him to the United States" and "re-issue its prior administrative stay of removal while the Board considers again his motion to reopen." Opp'n to Mot. to Remand at 11. He further asked us to order the BIA to grant his motion to reopen and to remand to the IJ for renewed consideration of his cancellation claim. Renewing the argument he made in his second motion for stay pending review, he also asked us either to order the BIA not to treat his involuntary departure due to his removal as a break in physical presence or to retroactively grant the stay of removal this court had earlier denied. In its reply, the government argued that a remand without instructions would best preserve the agency's discretion to address in the first instance the issues involving cancellation of removal.

A panel of this court denied without prejudice the government's motion to remand and ordered the government to file a response brief on the merits. It also referred Mr. Zaldivar's motion to remand with instructions to the merits panel. In its merits brief, the government renewed its request for a remand without instructions.

---

[1] By statute, noncitizens are generally limited to filing a single motion to reopen proceedings within 90 days of the entry of the final order of removal. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i). Mr. Zaldivar has already filed three such motions, but the BIA has discretionary authority to waive these limitations through a process referred to as "sua sponte" reopening. *See* 8 C.F.R. §1003.2(a).

We later abated this case pending the Supreme Court's consideration of the "two-step" process in a different case, *Niz-Chavez v. Garland*. The Supreme Court has now issued its decision in that case, in which it confirmed our interpretation of the stop-time rule as stated in *Banuelos-Galviz*. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478, 1486 (2021). Because the abatement is no longer necessary, it is hereby lifted.

At this point, the parties agree this case should be remanded to the BIA to determine whether to exercise its authority to reopen proceedings considering *Banuelos-Galviz* (and, presumably, *Niz-Chavez*). But they disagree about whether we should provide any additional instructions to the BIA in connection with the remand or grant a prospective or retrospective stay of removal or its consequences.

On consideration, we remand this case to the BIA for further consideration under *Banuelos-Galviz*. But we decline to provide the additional relief Mr. Zaldivar has requested.

First, we decline to grant a stay or injunction requiring the BIA to return Mr. Zaldivar to the United States or to order the BIA to stay the effect of its own proceedings. Mr. Zaldivar has failed to carry his burden "of showing that the circumstances justify" such injunctive relief in his case. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

We also decline to order the BIA to grant the motion to reopen and to remand to the IJ, or to instruct the BIA on how to treat Mr. Zaldivar's involuntary absence from the United States resulting from his removal. These are issues that the agency

6

should determine in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." (internal quotation marks omitted)).

The abatement of this matter ordered on April 12, 2021, is lifted. We grant Mr. Zaldivar's petition for review and remand this matter to the BIA to determine whether to exercise its authority to reopen proceedings. We grant Mr. Zaldivar's motion to proceed without prepayment of costs and fees but deny his second motion for stay of removal and his request for a remand with specific instructions.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

7